In the Matter of the Liquidation of NEW YORK TITLE AND MORTGAGE COMPANY.

WILLIAM P. CLARK et al., Appellants; LOUIS H. PINK, Superintendent of Insurance of the State of New York, as Liquidator of New York Title and Mortgage Company, et al., Respondents.

Argued November 22, 1937; decided January 25, 1938.

*William A. Barber* and *Joseph Diehl Fackenthal* for William P. Clark, appellant. A claim on the guaranty of a whole mortgage is secured by the mortgaged real estate and it is the value of the real estate which should be deducted from the face amount of the guaranteed mortgage. (*Kortright* v. *Cady*, 21 N. Y. 343; *Prudence Co.* v. *160 West 73d St. Corp.*, 260 N. Y. 205; *McCluskey* v. *Cromwell*, 11 N. Y. 593; *Fletcher* v. *Derrickson*, 3 Bosw. 181; *Benjamin* v. *Hillard*, 64 U. S. 149; *Humphrey* v. *Hayes*, 94 N. Y. 594.) The mortgage moratorium laws (Civ. Prac. Act, §§ 1083-a, 1083-b) apply and require deduction of the value of the real estate. (*Klinke* v. *Samuels*, 264 N. Y. 144; *Gaimari* v. *Horch*, 249 App. Div. 537; *Matter of Scheftel*, 294 N. Y. Supp. 387.) It is the real estate which is the security, and it is the value of such real estate which should be deducted from or set off against the face amount of the claim. (*Matter of Bond & Mortgage Guarantee Co.*, 247 App. Div. 911; *Central States Life Ins. Co.* v. *Koplar Co.*, 85 Fed. Rep. [2d] 181; *Matter of Englander Spring Bed Co.*, 17 Fed. Supp. 15; 86 Fed. Rep. [2d] 998; *Downtown Inv. Assn.* v. *Boston Metropolitan Bldgs., Inc.*, 81 Fed. Rep. [2d] 314; *Matter of Soltmann*, 238 Fed. Rep. 241; *Matter of McAusland*, 235 Fed. Rep. 173; *Matter of Reichard & Bro., Inc.*, 230 Fed. Rep. 525; *Matter of Dix*, 176 Fed. Rep. 582; *Matter of Davis*, 174 Fed. Rep. 556.) Even if the security for the mortgage debt could be held to be the mortgage " as a mortgage," the value of such mortgage is what would be obtained on enforcement thereof, viz., the value of the real estate. (*Wheeler* v. *Newbould*, 16 N. Y. 392; *Bright-*

son v. *Claflin*, 225 N. Y. 469; *Stern & Co.* v. *Pizitz*, 240 App. Div. 509; *Gutman* v. *Livingston*, 173 App. Div. 670; 226 N. Y. 582; *Morse* v. *Kelsey*, 78 Misc. Rep. 99; 156 App. Div. 946; *Roberts* v. *Park-Lexington Corp.*, 131 Misc. Rep. 6; *Grossman* v. *Lindemann*, 67 Misc. Rep. 437; *Lary* v. *National Trust Co.*, 4 N. Y. Weekly Digest, 56; *Perillo* v. *Zunino*, 259 N. Y. 21; *Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 215; *Richmond Mortgage & Loan Corp.* v. *Wachovia Bank & Trust Co.*, 57 Sup. Ct. Rep. 338; *Murray* v. *Marshall*, 94 N. Y. 611; *Spencer* v. *Spencer*, 95 N. Y. 353; *Antisdel* v. *Williamson*, 165 N. Y. 372.) In the light of the facts relied on by the appraiser, the value placed by him on the mortgage is palpably erroneous and without any reasonable basis. (*Heiman* v. *Bishop*, 272 N. Y. 83; *Matter of Frazer*, 150 Misc. Rep. 43.) A claim on a participation certificate in a single mortgage should have been completely disallowed. The courts below erred in directing an additional deduction from the value of the security because of the claimant's fractional interest therein. (*Matter of People [Title & Mortgage Guarantee Co.]*, 264 N. Y. 69; *Perillo* v. *Zunino*, 259 N. Y. 21; *Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 215; *Title Guarantee & Trust Co.* v. *Mortgage Comm.*, 273 N. Y. 415; *People* v. *Penniston*, 262 Ill. 191.)

*Joseph M. Proskauer, Raphael H. Weissman* and *J. Alvin Van Bergh* for Golden Hill Building Corporation, appellant. A mortgage is valued at the amount due thereon if such amount does not exceed the value of the underlying realty, less, where necessary, the probable cost and expense of reducing the realty to ownership and possession. A fractional interest in a mortgage is worth its aliquot part. (*Perillo* v. *Zunino*, 259 N. Y. 21; *Matter of Kingsland*, 118 Misc. Rep. 525; *Matter of Concklin*, 150 Misc. Rep. 53; *Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 215; *Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.*, 289 U. S. 689; *James* v. *Cowing*, 82 N. Y. 449; *Colton* v. *Kennedy*, 74 Misc. Rep. 217;

*Crandall* v. *Leach & Co.*, 221 App. Div. 263; *Henry* v. *North American Ry. Constr. Co.*, 158 Fed. Rep. 79; *Matter of Mayer*, 41 Fed. Rep. [2d] 856; *Matter of Morgan*, 39 Fed. Rep. [2d] 489; *Matter of Englander's Spring Bed Co.*, 17 Fed. Supp. 15; *Central States Life Ins. Co.* v. *Koplar Co.*, 85 Fed. Rep. [2d] 181.) Since one who holds a bond and mortgage as collateral security must collect thereon in accordance with their tenor or by foreclosure, and not sacrifice them by a sale, any theoretical " sales price " is irrelevant in valuing the collateral mortgage. (*Wheeler* v. *Newbould*, 16 N. Y. 392; *Brightson* v. *Claflin*, 225 N. Y. 469; *Morse* v. *Kelsey*, 78 Misc. Rep. 99; *Gutman* v. *Livingston*, 173 App. Div. 670; 226 N. Y. 582.) The deductions in the valuations of the security in two of the claims solely because fractional interests in bonds and mortgages were involved should be disallowed. (*Matter of New York Title & Mortgage Co.*, 160 Misc. Rep. 283; *Matter of Lawyers Mortgage Co.*, 154 Misc. Rep. 909; *Matter of New York Title & Mortgage Co.*, 156 Misc. Rep. 808; *Matter of People* [*Westchester Title & Trust Co.*], 268 N. Y. 432.)

*Harry Rodwin, Jess H. Rosenberg, Joseph Lapidus* and *William A. Shea* for respondent Louis H. Pink, Superintendent of Insurance, as liquidator of New York Title and Mortgage Company, respondent. The valuation of the security of claimants as mortgages and the allowance of the claims upon deduction of such valuation was correct. (*Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y. 69; *Prudential Ins. Co.* v. *Liberdar Holding Corp.*, 72 Fed. Rep. [2d] 395; *Trimm* v. *Marsh*, 54 N. Y. 599; *Merritt* v. *Bartholick*, 36 N. Y. 44; *Power* v. *Lester*, 23 N. Y. 527; *Kortright* v. *Cady*, 21 N. Y. 343; *Packer* v. *Rochester & Syracuse R. R. Co.*, 17 N. Y. 283; *Matter of Bankers Mortgage Co.*, 83 Fed. Rep. [2d] 50; *Royal Life Ins. Co.* v. *Gross*, 76 Fed. Rep. [2d] 219; *Prudence Co.* v. *Central Hanover Bank & Trust Co.*, 237 App. Div. 595; 261 N. Y. 420.) Section 1083-b of the Civil Practice Act is inapplicable. ( *Kress* v. *Central Trust Co.*, 246

App. Div. 76; 272 N. Y. 629; *Matter of Bowes*, 164 Misc. Rep. 190; *Weisel* v. *Hagdahl Realty Co.*, 241 App. Div. 314; *City Bank Farmers Trust Co.* v. *Ardlea Corp.*, 267 N. Y. 224; *Honeyman* v. *Hanan*, 275 N. Y. 382.) The claims were not discharged by the operation of the mortgage moratorium laws. (*Easton Furniture Mfg. Co.* v. *Caminez*, 146 App. Div. 436; *Silverman* v. *Rubenstein*, 162 N. Y. Supp. 733; *Herrington* v. *Davitt*, 220 N. Y. 162; *Union Trust Co.* v. *Willsea*, 275 N. Y. 164; *Matter of American Paper Co.*, 255 Fed. Rep. 121; *Klinke* v. *Samuels*, 264 N. Y. 144; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *Matter of People* [*Title & Mortgage Guar. Co.*], 264 N. Y. 69.) The allowance of a deduction in the value of the security with respect to claims based on mortgage participation certificates due to the fractional character of the mortgage interests held by the claimants was proper. (*Matter of Gibert*, 176 App. Div. 850; *Matter of Loeb*, 164 N. Y. Supp. 592; *Matter of Turner*, 127 Misc. Rep. 205; 221 App. Div. 116.)

*Michael F. Dee, Jesse Freidin, Morris Amchanitzky* and *Maurice Finkelstein* for Mortgage Commission of the State of New York, respondent. In evaluating the security of certificate holders some deduction must be made because of the practical difficulties inherent in fractional ownership. (*Morse* v. *Kelsey*, 78 Misc. Rep. 99; *Matter of Gibert*, 176 App. Div. 850; *Matter of Turner*, 127 Misc. Rep. 205; 221 App. Div. 116; *Matter of Loeb*, 164 N. Y. Supp. 592; *Heiman* v. *Bishop*, 272 N. Y. 83; *Matter of Proctor*, 41 Misc. Rep. 79; *Matter of Curtice*, 111 App. Div. 230.)

*Leon Leighton, Sidney Harris* and *Sidney Kaminsky* for Brentmore Estates, Inc., respondent. The allowance made to one of the certificate holders by the court at Special Term fairly measures the loss suffered by him and his fellow certificate holders as a result of the company's failure to perform its guaranty. (*Matter of New York Title & Mortgage Co.*, 157 Misc. Rep. 271; 248 App. Div. 715; 272 N. Y. 556; *Heiman* v. *Bishop*, 272 N. Y. 83.)

The value of the security referred to in subdivision 5 of section 425 of the Insurance Law (Cons. Laws, ch. 28) was properly interpreted by the court at Special Term to reach a result in harmony with the legislative policy not to encourage the wholesale foreclosure of certificated mortgages. (*Matter of People [Title & Mtge. Guar. Co.]*, 264 N. Y. 69.) Defenses based on the moratorium legislation are not available. (*Matter of People [Tit. & Mtge. Guar. Co.]*, 264 N. Y. 69.)

*Abraham J. Halprin, Simon H. Rifkind, Sidney R. Nussenfeld, Sherman S. Rogers, Barnet Kaprow, Joseph L. Maged, Thomas Keogh* and *Olin Potter Geer* for trustees of Series F-1, et al., respondents. The security held by claimants consists of mortgages, not real estate, and it is that security which must be evaluated. The court below was correct in approving the valuation of the mortgages as mortgages. (*Matter of Empire State Surety Co.*, 214 N. Y. 553; *Van Schaick* v. *Pennsylvania Exchange Bank*, 236 App. Div. 453; *Matter of Stupack*, 274 N. Y. 198; *First Trust & Deposit Co.* v. *Potter*, 155 Misc. Rep. 106.) The proper basis of valuation is the realization value as of July 15, 1935. (*Van Schaick* v. *Pennsylvania Exchange Bank*, 236 App. Div. 453; *Matter of People [Title & Mortgage Guarantee Co.]*, 264 N. Y. 69; *Matter of Stupack*, 274 N. Y. 198.) The deduction of fifteen per cent in the case of the claims on certificates was proper. (*Matter of People [Title & Mortgage Guarantee Co.]*, 264 N. Y. 69; *Matter of Stupack*, 274 N. Y. 198; *Kline* v. *275 Madison Ave. Corp.*, 149 Misc. Rep. 747; *Matter of Nemerov*, 149 Misc. Rep. 797; *Matter of Central Hanover Bank & Trust Co.*, 149 Misc. Rep. 488; 150 Misc. Rep. 351; *Tolfree* v. *New York Title & Mortgage Co.*, 72 Fed. Rep. [2d] 702; *People ex rel. Loeser & Co.* v. *Goldfogle*, 249 N. Y. 284.)

*Abraham N. Geller, Bernard A. Saslow* and *Robert B. Block* for Continental Bank & Trust Company of New York, as trustee for Series N-83 and N-108, respondent.

*Ralph W. Crolly* for Brooklyn Trust Company, respondent. It was proper for the court in valuing a fractional share in a mortgage where the mortgage company had itself, by certificates, divided the mortgage into shares or parts, to allow a reasonable deduction for such fractional interests. (*Matter of Gibert,* 176 App. Div. 850.) The Legislature intended, by article 9 of the Insurance Law, when providing for claims in the case of guaranteed mortgages and certificates, that the mortgages should be valued as " mortgages." (*Heiman* v. *Bishop,* 272 N. Y. 83.)

*Martin A. Schenck* and *Ralph C. Williams, Jr.,* for Irving Trust Company, as trustee, respondent.

*Maurice J. Dix* for certificate holders, *amici curiæ.* The terms of the certificates are totally different from the terms of the mortgage guaranty policies; the obligations of each are separate and distinct and have no relation to each other. (*Weil* v. *Manhattan Company,* 275 N. Y. 238; *Matter of People* [*Title & Mtge. Guar. Co.*], 264 N. Y. 69; *Matter of People* [*Lawyers Title & Guar. Co.*], 265 N. Y. 20; *Matter of People* [*New York Title & Mortgage Co.*], 265 N. Y. 30; *Klinke* v. *Samuels,* 264 N. Y. 144; *People* v. *Metropolitan Surety Co.,* 205 N. Y. 135; *Matter of Empire State Surety Co.,* 214 N. Y. 553; *Prudential Ins. Co.* v. *Liberdar Holding Corp.,* 72 Fed. Rep. [2d] 395; *Blanding* v. *Cohen,* 101 App. Div. 442; 184 N. Y. 538; *Vanderbilt* v. *Schreyer,* 91 N. Y. 392; *McMurray* v. *Noyes,* 72 N. Y. 523; *Brown* v. *Curtiss,* 2 N. Y. 225; *Vetter* v. *Welz & Zerweck,* 143 App. Div. 121; *Helios- Upton Co.* v. *Thomas,* 96 App. Div. 401; 184 N. Y. 585; *Bernard* v. *Kaufman,* 179 N. Y. Supp. 597; *Jacocks* v. *Dessar,* 129 App. Div. 286.)

LOUGHRAN, J. In this proceeding for the liquidation of New York Title and Mortgage Company under article XI of the Insurance Law (Cons. Laws, ch. 28), the Additional Special Term for the county of New York

confirmed the allowance by the Superintendent of Insurance, as liquidator, of the claims of four holders of the company's so-called mortgage guaranties. The Appellate Division affirmed and permitted this appeal by certain stockholders of the company. The issue certified to us for review is whether, upon the record, any of the claims were properly allowed in the sum found by the Superintendent to be the amount of the claimant's loss.

It is in order first to notice large elements of the case as to which there is no controversy. The stockholders concede that the undertakings of the company " were absolute obligations, as distinguished from contingent obligations, and were therefore provable under the statute." (See Insurance Law, § 425, subd. 3; *Matter of People* [*Bond & Mortgage Guarantee Co.*], 267 N. Y. 419.) The respective rights and obligations of the several parties in interest are to be fixed as of July 15, 1935, the date of the entry of the order of liquidation. (Insurance Law, § 404, subd. 2; *Matter of Empire State Surety Co.*, 214 N. Y. 553.) " The fundamental basis underlying the standard or method for the determination of claims on guaranties is [the words are the liquidator's] that the creditor-claimant shall receive such allowance as will measure his actual loss." This loss is to be determined in accordance with the following provision of the statute: " No claim of any secured claimant shall be allowed at a sum greater than the difference between the value of the security and the amount for which the claim is allowed, unless the claimant shall surrender his security to the superintendent in which event the claim shall be allowed in the full amount for which it is valued." (Insurance Law, § 425, subd. 5.) Each of the present claimants holds a mortgage or an interest in a mortgage. In no instance has the underlying real estate been acquired by any claimant through foreclosure or otherwise. From this statement of matters upon which the parties are in agreement we pass to the questions upon which our decision is sought.

(1) What is the meaning of the word "*security*" as used in subdivision 5 of section 425 of the statute? The Superintendent and the claimants contend that the security for a claim is the claimant's mortgage — as a mortgage — and that the value of the mortgage *qua* mortgage should be deducted from or set off against the face amount of the claim. The stockholders stand upon the position that the mortgaged real estate (and not the mortgage as such) is the security of the claimant and that the value of the real estate should be so set off or deducted. This question of construction has been decided against the stockholders by the courts below. In our opinion that ruling was right and effectuates the aim of the statute.

We quote again the words to be interpreted, stressing this time the phrases which to our minds make clear the idea of the Legislature. "No claim of any secured claimant shall be allowed at a sum greater than the difference between the value of *the security* and the amount for which the claim is allowed, *unless the claimant shall surrender his security* to the superintendent in which event the claim shall be allowed in the full amount for which it is valued." These words plainly contemplate that "the security" of which they speak is in any case to be an interest that can be surrendered by a claimant to the Superintendent. Surrender thereof is in so many words made the prime condition of full allowance of a secured claim. A claimant, of course, can surrender only the thing that he has in his possession. So far, then, as the statute in itself is our guide, it must follow that the value to be credited on a claim is the value of the mortgage (or share therein) or is the value of the realty if acquired, accordingly as the one asset or the other is in the possession of the claimant or claimants. Inasmuch as no interest in land is held by any of these claimants there is now no occasion to consider under what circumstances or within what limits realty reduced to a claimant's possession may be surrendered to the Superintendent.

(2) Next in appropriate sequence is our commentary on arguments addressed to us by the stockholders as reasons why we should not thus take the foregoing provision of the statute as we find it.

They say that there is not, and that there never has been, a mortgage market in this community; that the liquidator cannot value a mortgage *qua* mortgage without inventing such a market; and that the Legislature could never have intended to set up so fictitious a process for the determination of secured claims against the assets of the company. We suppose it is true that there never has been any market place for mortgages in the sense of a counter over which they could be exchanged for cash or its equivalent at prices publicly quoted currently. But everybody knows (and this record demonstrates the fact) that heretofore in times of good business there was a truly enormous trade in mortgages. Purchasers in that market had to determine whether to buy or not to buy the security and so must have had resort to some general tests of value. Indeed fractional shares in mortgages were in fact bought and sold for a price even in situations where (as in the case of a group series of mortgages) there could have been no definite identification of land that might ultimately be involved in the transaction. (See *Matter of Stupack*, 274 N. Y. 198.)

It is general knowledge, too, that a landowner as often as not will protect his equity by keeping a mortgage good, even when he believes that the land on forced sale would produce less than the face amount of the lien. Again, the financial responsibility of the obligor on the mortgage bond affects the question of the value of the security.

In short, it will not do to say that the mere value of the underlying land (though a factor of major weight) is the sole index of the worth of a mortgage.

Nor is the contrary proved for the purpose of this case by the fact that sale of a mortgage on July 15, 1935,

would have been so much a sacrifice that any sales price now deemed to have been then obtainable must be so theoretical as to be irrelevant to the issue of value. We have held that it is not necessarily impossible to determine the value of mortgaged premises as of the date of a foreclosure sale held when there was no market for real estate such as exists under ordinary conditions. (*Heiman* v. *Bishop*, 272 N. Y. 83.) It must be no less a possibility that the value of a mortgage as such can be ascertained as of a time when the ordinary trade in mortgages had stopped.

*Arguendo*, the stockholders also say that, even if the mortgage is to be valued as a mortgage, nevertheless the valuation as matter of law is determined by deducting from the value of the realty the cost of foreclosing it. For the reasons already stated, we think the ascertainment of the mortgage value is not to be confined to that or any other set form. The process is a factual affair — a a matter of the exercise of reasonable judgment after an intelligent and honest canvass of all factors relevant to the particular security.

(3) We turn now to the procedure whereby the Superintendent here determined the amount of a claimant's loss. Four claims are disposed of by his report to the Additional Special Term. The first (that of the claimant Ryder) may be taken for the purposes of illustration. The Ryder claim is based upon a guaranty policy which the company issued to the claimant on his purchase of a whole mortgage. Ryder claims for the unpaid mortgage principal of $5,500, with interest accrued to July 15, 1935, of $113.44, a total of $5,613.44. The Superintendent appraised the value of the underlying realty as of that date at $8,500 and the then value of the mortgage at $4,700. The loss was fixed at the difference between the sum claimed ($5,613.44) and the appraised value of the mortgage ($4,700) — that is to say, $913.44.

We cannot see why a $5,500 mortgage on property concededly worth $8,500 should itself be valued for no

more than $4,700. No suggestion is made by the record in respect of any principle which leads to this result. The only explanation is supplied by the brief for the Superintendent. His counsel there say:

" The security still held by Ryder and other claimants is a species of property not identical with the underlying real estate, but representing a right in real property the value of which is measured by the presence or absence of value in the real estate over and above the face amount of the mortgage. This excess of value constitutes the cushion or margin of safety which gives this particular form of security its special character as a form of investment.

" The very terms of the statutes fixing the cushion at a value of 50% over the face amount of the mortgage in the case of investments which might be made by insurance companies and other fiduciaries, was a legislative recognition of the necessity of the presence of an adequate cushion as an incident of a good mortgage. It was this requirement, too, that made the mortgages issued by the Company attractive as a form of security to the claimants here involved and others similarly situated who are holders of the Company's guarantees.

" It is submitted that the appraisers for the Superintendent, in fixing the value of the security held by each claimant at an amount less than the value of the underlying real estate, in each case, merely recognized that the inherent nature of the mortgage as security requires the presence of an adequate cushion or margin of safety as a necessary factor in the evaluation of a mortgage."

This can mean nothing more than that the liquidator has here undertaken to give to the claimant the equivalent of a new mortgage investment with all the safeguards that an investor would insist upon while he was free to risk or not to risk his money. We think that is not the meaning of the so-called guaranty upon which the claim is based. The guaranty was a promise that pay-

ment of the mortgage principal would at all events be made within eighteen months after demand therefor subsequently to the due date of the mortgage. The statutory mortgage loan standard obviously is not an admissible measure of any loss consequent upon default on such an undertaking. It is, therefore, quite impossible to sustain the orders entered below.

In stating that conclusion we do not mean to imply that the value of a mortgage must be appraised entirely upon the basis of the more tangible factors like the location of the property, the suitability of any improvement thereon and the rental income. We take it that the appraiser should envisage possible consequences of foreclosure, e, g., whether income would be diminished thereby with the result that new money would be required for carrying charges while the property was held thereafter, and whether additional financing would perhaps be an essential requisite of a resale. In a contingency of that sort, it might be advantageous that some other mortgage be placed and in that aspect appropriate consideration may properly be given by the appraiser to the amount for which a valid trust investment in the property could then probably be made.

(4) Two of the four claimants are holders of participation shares or certificates in mortgages guaranteed by the company. The courts below have adopted the recommendation of the Superintendent that an additional deduction of fifteen per cent in the valuation of the security for these two claims should be made, because of the fractional nature of the interests therein. The Additional Special Term said: " The difficulties and expense involved in securing the co-operation of sufficient certificate holders (or co-owners) to enforce a mortgage, through a reorganization proceeding or otherwise, must be taken into account in estimating the value of an undivided interest in a mortgage." (160 Misc. Rep. 67, 88.) We are of the same opinion.

It is said by the stockholders that the loss resulting from the necessity for concerted action can be no more than the cost of reorganization plus the fees and administration expenses of the trustees appointed for that purpose. Doubtless this may be true in some cases. We cannot say that it will necessarily be true for all participation claimants. The larger the group the greater must be the difficulty in disposing of the security piece-meal. When the number is relatively large so is the hazard that some will be unable to bear their respective portions of the common load. Quite probably there are other substantial loss factors where group action must be had. In each case such variants can be weighed only by the trained good sense of administrative judgment. The Superintendent tells us that he has no purpose to adopt as a rule of thumb the requirement of a deduction of as much as fifteen per cent for all cases wherein control of the security is divided. Situations may be presented, he admits, where a lesser allowance (or none at all) will be called for by the fractional character of the security. It would not be helpful to set forth the circumstances upon which the size of this additional deduction was here defined. For all that we know fifteen per cent was not too much so far as the two claims in question are concerned.

(5) Lastly, we think it appropriate to suggest not only that the Superintendent should disclose in the first instance the fundamentals of the theory of his future action in fixing the losses of claimants, but that fair play requires also that an opportunity should be afforded to test by cross-examination the validity of any appraisal entering into the allowance of a claim.

The orders should be reversed, without costs, the matter remitted to the Additional Special Term for further proceedings in accordance with this opinion and the questions certified answered in the negative.

The appeals taken as of right should be dismissed, without costs.

FINCH, J. (concurring). I concur in the decision that there should be a new trial upon which a full and complete hearing with ample opportunity for cross-examination must be accorded to all parties. I also agree that the " security " to be valued under the statute is the mortgage (including the bond which is secured by the mortgage).

This is a liquidation proceeding and to measure the actual loss to the claimant it is necessary to ascertain the true value of the mortgage. The value of the mortgage is what would be realized upon the enforcement of the mortgage in the usual manner and not what might be realized upon the sale of the mortgage as such. The authorities in this State hold that this is the proper basis for valuing such security. (See *Wheeler* v. *Newbould*, 16 N. Y. 392; *Brightson* v. *Claflin*, 225 N. Y. 469; *Perillo* v. *Zunino*, 259 N. Y. 21.) If then the applicable rule of law is that the value of the mortgage is what would be realized upon enforcement thereof, it follows, when the obligor on the bond is hopelessly insolvent, that the value of the mortgage is the value of the realty as if foreclosed less what would be the cost of foreclosure and any loss or expense in so doing. This latter includes all legal and administrative expenses such as receivership maintenance and loss of income. Valuation as if foreclosed does not mean a purchase price which may be realized by a forced sale at the auction block. It means " the amount which one desiring but not compelled to purchase will pay under ordinary conditions to a seller who desires but is not compelled to sell " (*Heiman* v. *Bishop*, 272 N. Y. 83, 86) and with such ordinary aids towards obtaining such reasonable value as the average holder of a mortgage would employ.

Objection is made that the above method for the valuation of mortgages is not applicable because of the

mortgage moratorium laws. (Civ. Prac. Act, §§ 1083-a, 1083-b.) These laws, however, do not purport to change rights but only to suspend foreclosure during the period of emergency and only where interest and taxes have been paid in full. Such continued payment is the best evidence that the mortgage is worth the face amount and will eventually be paid. But in any event we are valuing the mortgage not because the claimant is required to foreclose but merely to determine the value on the liquidation date. Therefore, the fact that, if interest and taxes are duly paid, the actual foreclosure may be postponed to the end of the emergency and the repeal of the mortgage moratorium laws, does not affect the validity of the method for valuing the mortgage.

CRANE, Ch. J., LEHMAN, O'BRIEN and RIPPEY, JJ., concur with LOUGHRAN, J.; FINCH, J., concurs in separate opinion; HUBBS, J., taking no part.

Ordered accordingly.