In the Matter of the Liquidation of NEW YORK TITLE AND MORTGAGE COMPANY.

Supreme Court, Additional Special Term, New York County, November 16, 1938.

*W. A. Shea* [*Harry Rodwin* and *Samuel Boksenbom* of counsel], for the Superintendent of Insurance of the State of New York.

*Maurice Finkelstein* [*Michael F. Dee* and *Louis Glickhouse* of counsel], for the Mortgage Commission of the State of New York.

*Thomas Keogh* [*H. M. Brennan* of counsel], for the trustee of Series Q and others.

*Wagner, Quillinan & Rifkind* [*S. H. Rifkind* of counsel], for the trustees of Series F-1.

*Davies, Auerbach & Cornell,* for the Irving Trust Company.

*Meyer Boskey* [*M. G. Tunick* of counsel], for Series CW-1.

*William J. G. Barrie,* as trustee of the estate of William Barrie, certificate holder, in person.

*Cullen & Dykman* [*R. W. Crolly* of counsel], for the Brooklyn Trust Company.

*Alexander E. Klupt,* for certificate holders of Series C-3 and others.

*Abraham N. Geller* [*Robert B. Block* of counsel], for the trustees of Series N-58, N-88 and N-108.

*M. B. & D. W. Blumenthal* [*M. B. Blumenthal* of counsel], for the Independent Guaranteed Mortgage Certificate Holders Protective Committee.

*M. B. Blumenthal,* for the trustees of Series BX-17, etc.

*Raphael H. Weissman,* for Golden Hill Building Corporation, a stockholder.

*Burlock E. Rabell,* for Mary Reul.

*Sherman S. Rogers,* for the trustees of Series C-2.

*Olin Potter Geer,* for C. J. Smyth, trustee of Series A-2.

*Glass & Lynch* [*Emanuel Linhardt* of counsel], for the Sterling National Bank and others.

*Smith, Chambers & Clare* [*Gerald Fitzgerald* of counsel], for the trustees of Series N-20.

*Leon Leighton,* for the Brentmore Estates, Inc.

*Kramer & Kleinfeld* [*B. Kaprow* of counsel], for the trustees of Series B-K.

*Pollock & Nemerov* [*Erwin Greenberg* and *Joseph A. Gluckman* of counsel], for certificate holders.

*Mitchell, Taylor, Capron & Marsh,* for the City Bank Farmers Trust Company.

*Elizabeth H. Martin,* certificate holder, in person.

*Barber, Fackenthal & Giddings* [*William A. Barber* of counsel], for the stockholders' committee.

FRANKENTHALER, J. The Superintendent of Insurance has applied to the court for an order (1) consolidating a number of pending proceedings relating to the determination of certain general claims against the New York Title and Mortgage Company in liquidation, and (2) for the designation of a referee to hear and report upon any objections filed to the Superintendent's "determinations" of the claims involved in said proceedings as well as upon any objections which may be filed to the Superintendent's future "determinations" in respect of all remaining general claims against the company.

On December 31, 1935, the Superintendent filed a first preliminary report and petition (and later a first supplement thereto) in which he reported his determination of four "test" claims, which he had selected as representative of the major portion of the claims filed, for the purpose of obtaining judicial instructions as to the general legal principles to be applied in evaluating typical claims against the company. Application was made to this court for confirmation of the Superintendent's findings and the motion to confirm was granted by this court with one modification (*Matter of New York Title & Mortgage Co.,* 160 Misc. 67; 161 id. 568. See, also, Id. 564). From this order certain stockholders took an appeal to the Appellate Division, which resulted in an affirmance by a divided court (*Matter of New York Title & Mortgage Co.,* 251 App. Div. 415). The matter was then taken to the Court of Appeals. On January 25, 1938, that court, as will presently be pointed out, approved all but one of the principles adopted by the Superintendent and upheld by this court and by the majority of the Appellate Division, but remitted the matter to the Additional Special Term for the purpose of obtaining from the Superintendent a fuller disclosure as to the "fundamentals of the theory of his future action in fixing the losses of claimants" (277 N. Y. 66, at p. 81) and affording the appellants an opportunity to cross-examine the Superintendent's appraisers. Thereafter the Superintendent filed a second supplement to his first report, in which he made certain recommendations as to the four claims which had formed the basis of the proceedings in this court and in the appellate courts. Application was thereupon made by the Superintendent "for an order approving and confirming the conclusions and recommendations contained in said Second Supplement and the determination and allowance of claims pursuant thereto." Prior to the return date of said motion the Superintendent filed a further supplemental

report containing his recommendations regarding the claims of all those who hold certificates in the two certificated issues which were the subject of his recommendations in two of the four original " test " claims. Subsequently the Superintendent filed a further report embodying his " determinations " of 3,423 additional claims. He states that he is in the process of passing upon the remaining claims against the company (more than 40,000 proofs of claims have been filed in the liquidation proceeding [see *Matter of New York Title & Mortgage Co.*, 160 Misc. 67, at p. 71]) and that he will continue to file further reports from time to time as quickly as he arrives at his " determinations."

In support of his present application that all the reports hitherto filed and the proceedings in which their confirmation is sought be consolidated into one proceeding which shall also embrace the reports still to be filed on claims not yet determined by him, the Superintendent states: "An expeditious disposition of any objections to the Superintendent's determinations of the general claims can best be had in one proceeding. If the objections to the Superintendent's determinations of claims are submitted to the Court in innumerable proceedings there will be endless delay and enormous increase in expense. Moreover, a uniform determination of claims which can be best assured in one proceeding is of the greatest importance. The Superintendent is also anxious to have all of the evidence that may be adduced by all parties in interest before the proceedings are terminated so that the Superintendent may reconsider his determinations in the light of all the evidence and advise the court of any re-determinations. Furthermore, creditors and stockholders are in a better position to intelligently contest any and all claims in one proceeding, and after that one proceeding is terminated in this Court, all parties in interest are in a better position to judge of the advisability of an appeal from any part of this Court's determination and an Appellate Court may modify any portion of this Court's determination. In this manner innumerable interlocutory appeals from partial determinations are avoided without any prejudice to any party in interest and to the advantage of all parties in interest because of the saving of time and expense."

The basis for the Superintendent's application for the appointment of a referee is also pointed out in his petition: " the claims are now being determined by the Superintendent at a rate which will enable the Superintendent to file reports of his determinations of large blocks of claims periodically hereafter at short intervals.

" The foregoing program for the disposition of the claims will require continuous hearings on any objections filed to the Superintendent's determinations and for that purpose the Superintendent respectfully suggests that this Court appoint a Referee to hear and

report on any objections filed to the Superintendent's determinations. The Superintendent respectfully suggests that in order to facilitate and expedite the proceedings, and to save expense, the order appointing the Referee should provide for the hearings to be held at the offices of the Company and the Superintendent will be glad to provide the necessary quarters and all the necessary stenographic and clerical services in connection with the Referee's hearings. The Superintendent also respectfully suggests that the order appointing the Refereee give the Referee the power finally to confirm without any hearing all of the Superintendent's determinations to which no objections are filed or where objections are settled, waived, withdrawn or defaulted, and to hold hearings on the remaining objections filed to any of the Superintendent's proposals with respect to claims and report thereon to the Court with his recommendations with all convenient speed after all the hearings are terminated, or at any stage of the proceedings when a report may be deemed advisable."

With these views of the Superintendent this court is in complete accord. The stockholders who were the appellants in the litigation regarding the four original " test " claims insist upon an immediate hearing upon these claims and they oppose the appointment of a referee to report upon said claims as well as the consolidation of the proceedings relating to these claims with proceedings upon other claims against the company. In the court's opinion, however, adoption of the procedure requested by the stockholders would serve no useful purpose and would result only in further delaying the final fixation of the general claims against the New York Title and Mortgage Company. The four original claims are no longer " test " claims, for the Superintendent used these claims only for the purpose of obtaining judicial rulings as to the principles to be applied in evaluating claims generally and these principles are now established as a consequence of the proceedings heretofore taken in this court and in our appellate courts.

That the four claims have served their " test " purpose by establishing the legal principles to be employed in appraising claims generally and that they are, therefore, no longer " test " claims is evident from the opinion of the Court of Appeals. The first question considered by that court was the meaning of the word " security " as used in subdivision 5 of section 425 of the statute (p. 76). After indicating the respective contentions of the parties the court held that the ruling of this court and of the majority of the Appellate Division was correct (p. 76): " The Superintendent and the claimants contend that the security for a claim is the claimant's mortgage — as a mortgage — and that the value of the mortgage *qua* mortgage should be deducted from or set off against the face amount of

the claim. The stockholders stand upon the position that the mortgaged real estate (and not the mortgage as such) is the security of the claimant and that the value of the real estate should be so set off or deducted. This question of construction has been decided against the stockholders by the courts below. In our opinion that ruling was right and effectuates the aim of the statute."

The second question considered was the method of valuing a mortgage *qua* mortgage. The stockholders contended that this could not be done and that the value of the underlying land was the "sole index of the worth of a mortgage" (p. 77). The Court of Appeals disagreed with this view of the stockholders as well as with their claim that "even if the mortgage is to be valued as a mortgage, nevertheless the valuation as a matter of law is determined by deducting from the value of the realty the cost of foreclosing it" (p. 78). The court pointed out that the process of evaluating the mortgage "is a factual affair" (pp. 77, 78):

"In short, it will not do to say that the mere value of the underlying land (though a factor of major weight) is the sole index of the worth of a mortgage.

"Nor is the contrary proved for the purpose of this case by the fact that sale of a mortgage on July 15, 1935, would have been so much a sacrifice that any sales price now deemed to have been then obtainable must be so theoretical as to be irrelevant to the issue of value. We have held that it is not necessarily impossible to determine the value of mortgaged premises as of the date of a foreclosure sale held when there was no market for real estate such as exists under ordinary conditions. (*Heiman* v. *Bishop*, 272 N. Y. 83.) It must be no less a possibility that the value of a mortgage as such can be ascertained as of a time when the ordinary trade in mortgages has stopped.

"*Arguendo*, the stockholders also say that, even if the mortgage is to be valued as a mortgage, nevertheless the valuation as matter of law is determined by deducting from the value of the realty the cost of foreclosing it. For the reasons already stated, we think the ascertainment of the mortgage value is not to be confined to that or any other set form. *The process is a factual affair* — a matter of the exercise of reasonable judgment after an intelligent and honest canvass of all factors relevant to the particular security." (Italics this court's.)

The third question considered by the court was the procedure whereby the Superintendent had determined the amounts of the claims. The court stated that (p. 79) "no suggestion is made by the record in respect of any principle" leading to the results arrived at by the Superintendent's appraisers and, accordingly, the court discussed the explanation contained in the Superintendent's brief

where an attempt was made to justify a method of valuation as to which the Court of Appeals made the following observations (pp. 79, 80):

"This can mean nothing more than that the liquidator has here undertaken to give to the claimant the equivalent of a new mortgage investment with all the safeguards that an investor would insist upon while he was free to risk or not to risk his money. We think that is not the meaning of the so-called guaranty upon which the claim is based. The guaranty was a promise that payment of the mortgage principal would at all events be made within eighteen months after demand therefor subsequently to the due date of the mortgage. The statutory mortgage loan standard obviously is not an admissible measure of any loss consequent upon default on such an undertaking. It is, therefore, quite impossible to sustain the orders entered below.

"In stating that conclusion we do not mean to imply that the value of a mortgage must be appraised entirely upon the basis of the more tangible factors like the location of the property, the suitability of any improvement thereon and the rental income. We take it that the appraiser should envisage possible consequences of foreclosure, e. g., whether income would be diminished thereby with the result that new money would be required for carrying charges while the property was held thereafter, and whether additional financing would perhaps be an essential requisite of a resale. In a contingency of that sort, it might be advantageous that some other mortgage be placed and in that aspect appropriate consideration may properly be given by the appraiser to the amount for which a valid trust investment in the property could then probably be made."

The fourth question taken up by the Court of Appeals was the method of evaluating certificates or portions of a mortgage. Here again the views of this court and of the majority of the Appellate Division were expressly approved (p. 80): "(4) Two of the four claimants are holders of participation shares or certificates in mortgages guaranteed by the company. The courts below have adopted the recommendation of the Superintendent that an additional deduction of fifteen per cent in the valuation of the security for these two claims should be made, because of the fractional nature of the interests therein. The Additional Special Term said: 'The difficulties and expense involved in securing the co-operation of sufficient certificate holders (or co-owners) to enforce a mortgage, through a reorganization proceeding or otherwise, must be taken into account in estimating the value of an undivided interest in a mortgage.' (160 Misc. Rep. 67, 88.) We are of the same opinion." The court then concluded with the following statement

(p. 81): " Lastly, we think it appropriate to suggest not only that the Superintendent should disclose in the first instance the fundamentals of the theory of his future action in fixing the losses of claimants, but that fair play requires also that an opportunity should be afforded to test by cross-examination the validity of any appraisal entering into the allowance of a claim."

The application of the principles thus approved by the Court of Appeals to the four claims will now raise *factual* questions primarily and there is, therefore, no longer any sound reason for treating the four claims in a manner different from that adopted for the determination of all general claims against the company. More than two years have been consumed in obtaining rulings from the Additional Special Term, the Appellate Division and the Court of. Appeals in regard to the principles to be employed in evaluating the four claims (the Superintendent's first report on the four claims was filed on the 31st day of December, 1935, while the Court of Appeals decision was handed down January 25, 1938). During this period no determinations were made by the Superintendent of the remaining general claims against the company, more than 40,000 in number. Had the usual practice in the case of insurance liquidations been followed and no test cases been litigated, the Superintendent would have proceeded to pass upon all the claims against the company and would probably have completed this work by the present time. It is now more than three years since the order of liquidation was entered and not a single general claim has yet been determined by this court, or, *a fortiori*, by any appellate court. Under the circumstances, it is imperative that the procedure to be adopted for the determination of claims be that which is best calculated to bring about the most expeditious determination of *all* the claims, not merely of the. four claims which were used as .a vehicle for the establishment of legal principles and have now outlived their usefulness as such.

The contention that the decision of the Court of Appeals, remitting the matter to the Additional Special Term for further proceedings in accordance with its opinion, is a mandate that this court proceed *forthwith, and without a referee*, to hear the further report on said claims filed by the Superintendent, is without merit. No question either as to the time within which the further proceedings for which the matter was remitted had to be taken or as to whether said proceedings were to be conducted without the appointment of a referee to take proof and report, was considered by the Court of Appeals. All that said court held in this connection was that the claims could not be confirmed without further disclosure, by the Superintendent and through cross-examination, of the principles employed in evaluating the claims.

The objections to the appointment of a referee on the ground that the court is without power to make such an appointment and that it would be improper, even if the court has the power, are unfounded. It is the regular and established practice to appoint referees to hear claims in liquidations of insurance companies. In this very matter both the majority and the minority opinions of the Appellate Division were in agreement that it was proper to appoint a referee to take proof where issues were raised as to the correct valuation of any claim. The prevailing opinion of Mr. Justice CALLAHAN said (at p. 424): "If contradictory affidavits are submitted raising issues of fact in these cases, the Special Term may direct the examination of witnesses, either before the court or a referee, for the determination of those issues."

The minority opinion declared (p. 437): "Accordingly, the value of these properties should be determined by a reference."

It is to be noted that the affidavits submitted by counsel for the committee of stockholders of the New York Title and Mortgage Company, and the individual stockholder who was one of the appellants in the Appellate Division and in the Court of Appeals, although opposing a reference of the four so-called "test" claims, on the ground that the court is without power to grant the application of the Superintendent for the appointment of a referee, and also on the ground that such appointment would be improper, admit that if in the future a large number of claims are contested "it would probably be desirable to hold these hearings before a referee." It is obviously impossible for the court to hear by itself all the proof which may be presented in regard to the more than 40,000 claims filed against the New York Title and Mortgage Company, and the tens of thousands of additional claims filed against other guaranty companies which are now in liquidation.

The consolidation of the proceedings and the appointment of a standing referee will not prejudice the objecting stockholders. "The Superintendent does not insist that the disposition of what remain of the so-called test cases await the disposition of all claims but asks only that the question as to when and on what claims interim reports may be made by the referee, to be passed upon by the court, be left to the discretion of the referee, with the right to any party to apply to the court at any time for an order requiring an interim report from the referee. And the Superintendent now consents to a separate and initial report by the referee on the so-called test cases or any of them, together with the three big series, to wit: Series F-1, C-2 and BK." (Affidavit of Deputy Superintendent of Insurance, verified 28th day of October, 1938.) In fact, as pointed out by said Deputy, the granting of the Super-

intendent's application will be advantageous to the objecting stockholders " in that they will be afforded an opportunity to litigate all questions of fact as well as any questions of law that will be decisive of the question of the stockholders' equity in one proceeding." Furthermore, counsel for the Mortgage Commission states that he " is satisfied that the plan now proposed by the Superintendent of Insurance is the most practical and least expensive method so far suggested for the proof of claims, and the valuation of their underlying securities, and that the Mortgage Commission in all respects joins in the present application of the Superintendent of Insurance."

The motion is granted. Hon. John Godfrey Saxe is designated as referee. Settle order.