### PRUDENTIAL INS. CO. OF AMERICA v. LAND ESTATES, Inc.

### SAME v. LIBERDAR HOLDING CORPORATION.

District Court, S. D. New York. April 3, 1939.

PATTERSON, Circuit Judge.

Receivers were appointed on creditors' bills on August 18, 1933. In due course an order for filing claims was made and a special master appointed to take testimony on claims and report to the court. The special master on November 19, 1938 filed a report recommending allowance of claims filed by various trustees of "certificated mortgages", these being mortgages made by the one or the other of the insolvent companies in which a large number of investors had purchased certificates representing undivided interests. No exceptions having been filed, the report was confirmed and the claims allowed as matter of course by orders of December 5, 1938. The claims were allowed at the full face amount of the bonds, without deduction of the value of the mortgages held as security for the bonds, but the orders carried the proviso that dividends would be limited to amounts which, taken with the amounts realized from the securities, would not exceed the claims as allowed. The claims so allowed on the certificated issues were large, some $2,450,000 in the case of Land Estates and $3,300,000 in the case of Liberdar Holding Corporation. Later the plaintiff, an unsecured creditor with an allowed claim against each company, moved to vacate the orders. By petition of February 20, 1939 it shows that it had no knowledge of the allowance of the claims prior to January 1939, and it asserts that as matter of law the claims were not allowable to any extent, or if allowable at all were allowable only for the difference between the face amount of the bonds and

the value of the security. The motion was opposed by the receiver and by the trustees of the certificated issues.

■ There was no irregularity which lays the orders open to attack at this time. The plaintiff and other creditors were not entitled to notice of the special master's report on claims in which they had no direct interest. The receiver had notice and did not oppose confirmation of the special master's report; in fact the confirming orders were submitted by the receiver. But time is not generally of the essence in equity receiverships, and no final action has been taken in reliance on the orders allowing the claims. If error of the large proportions alleged has been committed, it should not stand uncorrected. The plaintiff's case against the orders will therefore be considered on the merits.

■ The claims on bond and mortgage have been allowed at the face amount of the bond, regardless of the value of the mortgage and of anything received on it since the appointment of receivers, with the proviso that the creditor shall not receive in dividends and from his security more than the full amount due him. This is the rule of Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640. The Merrill case was one of an insolvent national bank, but the rule has been applied so frequently in equity receiverships in the federal courts that it is generally referred to as the equity receivership rule. It would be idle at this late day for a court of first instance to consider whether the rule is less fair than the rule laid down in the Bankruptcy Act, requiring deduction of securities received from the bankrupt in determining the amount of a claim. Unless there is good reason for a departure from the Merrill rule in these two cases, the application of that rule was obviously proper.

■ The argument is made that while the Merrill case has been followed commonly in equity receiverships in the past, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has changed all that and has made it necessary to apply whatever rule is recognized in the decisions of the state where the insolvent company did business and incurred debts, in this case New York. Whether Erie R. Co. v. Tompkins has brought about such a change need not be decided now. The New York courts adhere to the same rule as applied in equity receiverships, that in the winding up of insolvent companies a creditor with security may prove the whole amount of the debt without deduction of the value of the security, with limitation on the amount of dividend. People v. E. Remington & Sons, 121 N.Y. 328, 24 N.E. 793, 8 L.R.A. 458; McGrath v. Carnegie Trust Co., 221 N.Y. 92, 116 N.E. 787. The Remington case was one of the authorities relied on by the Supreme Court in the Merrill case. By New York statute the creditors of a failed insurance company must offset their security, Insurance Law, Consol.Laws, c. 28, section 425, and creditors of a debtor who makes a voluntary assignment must do the same, Debtor and Creditor Law, Consol.Laws, c. 12, section 15; but there is no reason to believe that these enactments relative to two specific situations reflect a general policy governing all kinds of insolvencies. The companies under receivership in these cases, although subsidiaries of an insurance company, were not themselves insurance companies. They were everyday business companies, engaged in holding and operating real estate.

■■ A stronger argument is that the allowance of the secured claims at full face value of the bonds runs counter to recent New York legislation extending temporary relief to distressed mortgagors. In 1933 the state legislature, recognizing that there was presently no fair market for real estate on forced sales, amended the practice provisions relative to foreclosure of mortgages on real estate, providing among other things that deficiency judgment against the person liable for the debt should be limited to the amount of the debt less market value of the real estate or the sale price on foreclosure, whichever was the higher, and that unless deficiency judgment was asked for in the foreclosure action the proceeds of sale should be deemed full satisfaction of the mortgage debt. Civil Practice Act, section 1083-a. It was also enacted, section 1083-b, that in any action during the emergency to collect on a debt secured solely by mortgage, other than action for foreclosure, any person liable for the debt might set off the fair market value of the mortgaged property less prior liens. In the present cases many mortgagees brought actions to foreclose their mortgages after the appointment of receivers and after the time for filing claims against the insolvent defendants had expired, by leave of this court,

and in the foreclosure actions deficiency judgments against the mortgagors was not asked for. In some instances the order granting leave to foreclose forbade entry of deficiency judgment without further leave; in others the order was silent as to deficiency judgment. The argument under this head is that without deficiency judgment the creditors with mortgages on real estate situated in New York have no allowable claims or at best have claims for only the difference between the debt and the fair market value of the mortgaged property. The Appellate Division has held, however, that the emergency legislation on mortgage foreclosures, and specifically section 1083-b of the Civil Practice Act, have no bearing in a proceeding to wind up an insolvent guarantor of mortgages. Matter of New York Title & Mortgage Co., 251 App.Div. 415, 297 N.Y.S. 52. The case was reversed in the Court of Appeals, but on other grounds. 277 N.Y. 66, 13 N.E.2d 41, 115 A.L.R. 614. There is a decision to the same effect by Judge Knight in the Western District. In re Rochester Pad & Wrapper Co., 20 F.Supp. 295, D.C.N.Y. If we pass the question whether the emergency legislation may operate on equity receiverships in effect before the effective date of the legislation, it is made evident that the New York courts have held that the statutory amendments were not intended to have any application in insolvency proceedings for winding up the business of companies liable on mortgage debts. These decisions are binding on this court, and the plaintiff's contention based on the emergency mortgage statutes cannot be accepted.

The plaintiff devotes a deal of space in its papers to a plan adopted by most of the creditors for the purchase of the assets held by the receiver. The plan has not yet been formally presented to the court, and no notice may now be taken of it. The present issue is merely the allowance of claims against the insolvent companies. The plaintiff also directs attention to the relationship of subsidiaries and parent that existed between these two companies and New York Title & Mortgage Company. The relationship existed, but has no importance for present purposes.

It follows that the orders allowing the claims based on bond and mortgage at the full face amount of the debt were right and that the motion to vacate them should be denied.