In the Matter of Edward A. Kimmel et al., Petitioners, against Joseph D. McGoldrick, as State Rent Administrator, Constituting the Temporary State Housing Rent Commission, Respondent.

Supreme Court, Special Term, New York County, June 3, 1952.

*Maurice R. Whitebook* and *David Sugarman* for petitioners.

*Robert H. Schaffer* and *Norman S. Fenton* for respondent.

*Nathan B. Kogan* and *Irving Constant* for Gertrude Tiedman and others, interveners, respondents.

HECHT, J. This article 78 proceeding seeks a review of a determination of the Temporary State Housing Rent Commission fixing rents in premises owned by petitioners. Petitioners' complaint is that the commission improperly fixed the valuation of their property at $177,182.

The State Residential Rent Law (L. 1946, ch. 274, as amd.) directs that provision shall be made for individual adjustment of maximum rent where the rental income from a property yields a net annual return of less than 4% of the valuation of the property. Such valuation shall be the current equalized assessed valuation upon which taxes are payable on March 15, 1951. " The commission may make a determination that the valuation of the property is an amount different from such assessed valuation where the valuation of the land without the buildings thereon does not bear a reasonable relationship to the valuation of the buildings themselves ". (State Residential Rent Law, § 4, subd. 4, par. [a].)

The State Rent Administrator rendered his opinion No. 85, dated November, 1951, indicating the consideration which would guide him in applying the foregoing exception. That opinion states:

" After a careful study of hundreds of applications already filed with the Administrator, and examination of their rental structure and other factors affecting value, the Administrator has determined that only where the assessed land valuation is more than three times the value of the building can there be deemed to exist a gross disproportion warranting a reduction in the assessed valuation. It therefore follows that in any case in which the assessed valuation of the land is not in excess of three times the assessed figure for the structure, the 1950-51 assessed valuation will be used for the purposes of this section.

" Where the disproportion does exist because the land value is more than three times the value of the improvement, land value in excess of three times the building value will be deducted from the current assessed valuation for the purpose of computing the 4 percent return. This will normally provide a valuation not unfair to either the property owner or to the tenants.

" However, as a result of an extensive study of this problem, the Administrator believes it proper to apply another criterion after the application of the three times formula. In examining the hundreds of applications surveyed in studying this problem the Administrator has come across cases where the ratio of three times land value to building, if considered alone, would be inequitable to the landlord.   *   *   *   A study of 1698 properties in New York City disclosed the significant fact that the equalized assessed valuation normally bore a ratio of between 5.4 and 6.3 to the rental income, the city-wide average being 5.6. This statistical study further indicated to the Administrator that it would be equitable and proper to also consider this factor of rental income in computing how much the current assessed valuation should be reduced in cases involving underimproved properties.

" After a careful study of the rent structures of many buildings, and a thorough consideration of the entire problem, the Administrator has concluded that valuation for the purposes of this section in disproportion cases should not be reduced to a figure less than five times the annual rent roll of the building. In determining the amount to which assessed valuation should be reduced in disproportion cases the Administrator will therefore apply a two-fold criteria. Valuation will be considered

as either four times the value of the building (which will therefore allow land value not in excess of three times the building value) or five times the annual rent roll, computed on the basis of the maximum rents in effect on May 1, 1950, whichever is the higher. Should five times the rent roll be in excess of the current assessed valuation for 1950–51 the latter figure would be accepted as valuation. Under no circumstances would a figure higher than the assessed valuation for 1950–51 be used.''

Petitioners' property is assessed at $205,000, of which $180,-000 is allocated to the land and $25,000 to the building. It is conceded that the land valuation does not bear a reasonable relationship to the building valuation. Since four times the building valuation would be only $100,000, the administrator used the alternative method of five times the annual rent roll of $35,436.40, thus arriving at the complained of valuation of $177,182.

It would be unfair to tenants to fix their rentals on a basis giving the statutory return on the valuation of land which is not adequately improved (*Matter of Murphy* [*Blasio*], 278 App. Div. 814 [1st Dept.]). The Legislature could properly provide, as it did, that assessed valuation should not be controlling in such a case and the disproportion in the instant case brings it within the statutory exception. However, I can see no logic or fairness in the administrator's determination that in such cases he will fix the value at five times the annual rent roll computed on the basis of the maximum rents in effect on May 1, 1950.

In the first place, the administrator's own opinion states: '' A study of 1698 properties in New York City disclosed the significant fact that the equalized assessed valuation normally bore a ratio of between 5.4 and 6.3 to the rental income, the city-wide average being 5.6.'' No reason is given for his adopting the lesser multiple of five times the rents in the face of his own showing that the average is 5.6 times the rents.

In the second place, no one knows how representative are the 1,698 properties studied by him or how accurate are the computations and the conclusions based on such study. The administrator cannot hold a public hearing in each case to which he applies this conclusion, but it would seem desirable for him to hold a public hearing at which interested landlords might examine the evidence upon which he relies and submit any additional evidence which they deem material (cf. *Matter of New York Title & Mtge. Co.*, 277 N. Y. 66, 81).

Third, and most important, the administrator's decision is arbitrary in a fundamental sense. His method is fatally defec-

tive in that he uses the very rentals which he is directed to adjust as the sole criterion of determining the valuation on the basis of which he is to fix the new rentals.

Determination of value is an altogether different problem from an application of a broad statutory control which the administrator is peculiarly qualified to pass on in the first instance, like the city comptroller's determination where " goods are being purchased for resale " (*Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104, 108); the State Department of Labor's determination whether a place of business is a " factory " (*Red Book Cold Stor. Co.* v. *Department of Labor,* 295 N. Y. 1, 9); the National Labor Relation Board's determination that specified persons are " employees " (*Board* v. *Hearst Publications,* 322 U. S. 111, 131); or the Federal Communications Commission's determination that one telephone company is under the " control " of another (*Rochester Tel. Corp.* v. *United States,* 307 U. S. 125, 145–146). But since *Heiman* v. *Bishop* (272 N. Y. 83) the courts in numerous cases have laid down the proper criteria for ascertaining the valuation of real estate. An administrative determination of value, therefore, carries no such weight. Thus, in *Matter of New York Title & Mtge. Co.* (*supra*) the court deferred to " the trained good sense of administrative judgment " in reviewing the determination of the Superintendent of Insurance as to the deduction to be made for fractionalism in claims based on certificated mortgages, but engaged in a comprehensive and independent examination of his determination of the value of the mortgages themselves (277 N. Y. 78–81).

It was competent for the Legislature, in order to avoid the necessity for taking testimony on each application to fix rents, to provide that assessed valuation should normally be accepted, subject to the exception already set forth and the further exception where there is a request for reduction of assessment pending, or where the prior year's assessment has been reduced, or where there had been a sale within the preceding year at a different price (State Residential Rent Law, § 4, subd. 4, par. [a]). It did not give the administrator the power to fix the valuation by the illogical and unfair method used here, but only in accordance with recognized judicial standards (cf. *Heiman* v. *Bishop, supra*).

The matter is accordingly remitted to the Temporary State Housing Rent Commission, with directions to determine the valuation of the property in accordance with recognized judicial standards. Settle order.