In the Matter of the Liquidation of NEW YORK TITLE AND MORT-
GAGE COMPANY.

In the Matter of a Plan for the Readjustment, Modification or Reorganization of the Rights of All the Holders of Mortgage Investments Represented by Series F-1 First Mortgage Participation Certificates Issued and Guaranteed by NEW YORK TITLE AND MORTGAGE COMPANY.

Supreme Court, Additional Special Term, New York County, May 12, 1937.

384

*Wagner, Quillinan & Rifkind* and *Hetkin, Rubin & Hetkin,* for the petitioners.

*William A. Shea,* for the Superintendent of Insurance of the State of New York, opposed.

FRANKENTHALER, J. Heretofore the petitioners moved for an adjudication that all of the moneys received by the New York Title and Mortgage Company under assignments of rents of properties covered by mortgages of this series were received in trust for the benefit of the certificate holders herein and/or their representatives. This motion was granted (*Matter of New York Title & Mortgage Company [Series F-1]*, 162 Misc. 117), this court being of the opinion that the title company was under an implied obligation to require the owners of the mortgaged properties to pay taxes, assessments, water rates, etc., and thus prevent the deposited mortgages from becoming junior liens. The company was required by the terms of the certificates and of the depositary agreement, subject to which they were issued, to deposit, as collateral, mortgages which were first liens upon the premises covered by them. Although it may not have been under a duty to use *its own funds* for the purpose of paying taxes and other charges, whose existence unpaid would deprive the mortgages of their status as first liens, it could not properly collect from the mortgagors " the only income there was to pay the taxes " (*Matter of People [Lawyers Title & Guar. Co.],* 265 N. Y. 20, 27), and retain the same for itself, leaving the certificate holders' security impaired by outstanding prior incumbrances. The mortgagors were required by the terms of their mortgages to pay taxes and other liens on the mortgaged properties. The title company had tied the hands of the certificate holders so that they could not act for themselves and enforce these provisions of the mortgages, for it had constituted itself, by contract, the exclusive agent of the certificate holders in respect to the enforcement of the mortgages. To permit the company to take for itself the rents or income of the properties pledged to the certificate holders as security, while taxes and other liens impaired

the value thereof, would, under the circumstances, be unthinkable. In an article in the Columbia Law Review (June, 1935) the view is expressed (p. 885) that " since their [the deposited mortgages] value would be impaired by a piling-up of tax arrears and penalties, it might well be contended that the company was under an implied obligation to prevent that occurrence by appropriate application of collections from the several mortgagors."

It is now sought to obtain a similar adjudication as to moneys received by the title company " under special deposit agreements in connection with properties encumbered by mortgages  *  *  * constituting part of the security against which the mortgage investments herein have been issued." In support of the motion it is claimed that under the deposit agreements owners of properties deposited fixed sums of money at regular intervals which the company " might then apply as it saw fit toward any of the fixed charges on the " properties; it is contended that since the title company was vested with uncontrolled discretion as to the manner of application of the payments received under the deposit agreements (*i. e.*, the owners had not specified for what purposes the payments were to be used) it could not properly use the deposited funds to repay interest advances previously made by it while arrears of taxes, assessments or water charges existed.

In *Matter of New York Title & Mortgage Co.* (151 Misc. 701) this court held that the title company did not have the right to apply moneys collected by it under rent assignments to the payment of interest while prior liens for unpaid taxes existed. The court took the view that (p. 703) " the rents collected by the company under the assignment were held by it primarily as agent of the petitioner " and that " the manner of their application was a matter for the principal and not the agent to determine," although " the guarantor could insist that any surplus *after payment of all proper charges* be used for the payment of guaranteed interest or principal." The court added (pp. 703, 704): " The guaranty company could not, except with the authority or consent of its principal, apply the rents in the first instance to the payment of interest, thereby minimizing its own obligation on its guaranty and at the same time impairing the value of its principal's mortgage by subordinating the same to a prior lien for unpaid taxes. The company was under the primary duty of serving the interests of its principal and it had no right to subordinate those interests to its own by impairing its principal's security in order to reduce its own loss under its guaranty. It was for the principal and not for the agent to determine the manner of application of the principal's own funds." The views thus expressed were not predi-

cated upon the fact that the funds received under the rent assignments represented the rents of the mortgaged property. They would be equally applicable to any payments received from the mortgagor or the owner of the property unaccompanied by specific instructions as to the manner of their application. It was not the source of the payments which mattered, but rather the fact that the agent possessed the discretion as to how to apply them.

Subsequent to the handing down of this opinion, the Court of Appeals upheld a determination of this court that the title company could not properly use moneys received under an assignment of rents, while there were arrears of taxes, assessments, water charges, etc., to repay itself for interest previously advanced by it. (*Matter of People [Lawyers Title & Guar. Co.], supra.*) The opinion of the Court of Appeals indicates, however, that its holding was based solely on the fact that by accepting the rent assignment the company (p. 27) " took the only income there was to pay the taxes." The court expressly stated that ordinarily where a title company advanced interest to the holder of a guaranteed mortgage and subsequently received the interest money from the mortgagor or owner, it could keep and apply the same to the advance made to the mortgagee, and that (p. 27) " *the fact the same taxes might have been due would not have changed these obligations.*" In other words, the existence of arrears of taxes did not, according to the Court of Appeals, deprive the title company of the right to recoup interest advances from funds subsequently received from the owner or mortgagor unless, by taking the rents, the company appropriated to itself the only income available to pay the taxes. Shortly thereafter and in accord with the views thus expressed by the Court of Appeals, an application by the owner of a bond and mortgage guaranteed by Lawyers Mortgage Company to compel the rehabilitator of that company to turn over payments received by him from the owner of the mortgaged premises was denied by this court because " the moneys in question were collected pursuant to a special agreement with the property owner and not as rents or income from the property." (*Matter of Lawyers Mortgage Co. [Application of Brooklyn Trust Co.],* Additional Special Term, New York County, N. Y. L. J. July 9, 1934, p. 72.) This interpretation of the opinion of the Court of Appeals, viz., that a distinction must be drawn between rents and other payments received from the owner of the mortgaged property, is confirmed by its affirmance of the decision of the Appellate Division in the Second Department in *Matter of People (Bond & Mortgage Guarantee Co.)* (245 App. Div. 744; affd., 270 N. Y. 527). In that case the owner, while in default in the payment of interest and taxes, made payments to the mortgage company without specifying how the moneys were

to be applied. The mortgage company used the moneys to reimburse itself for interest advanced to the mortgagee. The Appellate Division reversed the ruling of the Special Term, Kings county, which had held that the moneys should have been applied to the payment of taxes, saying (p. 744): " At the time the mortgage company used the moneys it was not in default under its contract of guaranty. It paid the respondent the interest due and acted with reasonable promptness and attempted in good faith to compel payment of the taxes. Under the circumstances it was error to make the order appealed from."

In view of these decisions of our highest court, this court is constrained to hold that the application by the title company of funds received under deposit agreements to reimburse itself for interest previously advanced was not improper or wrongful unless the funds deposited represented the rents or income of the mortgaged properties. In the latter event the recoupments would be wrongful, as in the case of reimbursements made from funds received under rent assignments. The mere fact, however, that the title company possessed discretion as to how to apply the deposited funds would furnish insufficient basis, under the reasoning of the decisions previously referred to, for holding that it had no right to reimburse itself for prior interest advances until it had first discharged all arrears of taxes, assessments, water charges, etc.

As it is possible that some or all of the funds received under the deposit agreements herein were, in fact, the rents or income of the mortgaged properties, an official referee will be designated, in accordance with the suggestion of the petitioners, to take proof and report with his opinion with all convenient speed as to whether any of the funds received under the deposit agreements represented the rents or income of mortgaged properties, and if so, to what extent. The question of whether the company attempted with reasonable promptness and in good faith to compel the payment of the taxes will also be referred to the referee. (*Matter of People [Bond & Mortgage Guarantee Co.], supra.*)

In addition to seeking a declaration that the moneys received under deposit agreements represented trust funds, the petitioners apply for an adjudication that they possess a trust claim against the title company and its liquidator in the sum of $379,270.85, representing moneys received by the company under rent assignments. Although, as previously observed, the court has already declared that the moneys received under the rent assignments represented trust funds, no adjudication as to the amount thus received was asked for or made. The petitioners seek to have the amount fixed on the present application.

The liquidator contends that in determining the extent to which the recoupments by the company were proper or improper, each parcel of property must be treated as a separate entity " and the tax position of said parcel determined at the date of each recoupment." He states that: " the utilization by the company of income from any given piece of property under an assignment of rents to reimburse itself for prior advances of interest to certificate holders, was improper only to the extent that said recoupment exceeded the outstanding taxes and penalties against that parcel of property. It is not given to the trustees to compute the taxes and penalties due and owing on all properties as a group, and then assert that any attempt on the part of the company to reimburse itself for prior advances of interest to certificate holders out of funds flowing from any single parcel of property was improper until all taxes on all properties in the group were dischargep." In the court's opinion this contention of the liquidator must be overruled. The certificates of this series are secured by a group or pool of deposited bonds and mortgages which must be treated as a unit. The certificates do not purport to confer upon their holders undivided interests in any *specific* bonds or mortgages. For this reason, in applying the doctrine of *Matter of People (Lawyers Title & Guar. Co. (supra)*, that the title company could not appropriate to itself the rents or income of the mortgaged premises while arrears of taxes, assessments, water rates, etc., existed, the mortgaged premises must be deemed to include *all* the mortgaged properties securing the certificates. In other words, while arrears of taxes, water rates, assessments, etc., existed in respect to any of the mortgaged properties of the series the title company could not properly pay to or retain for itself the rents or income received from any one or more of the mortgaged properties. In *Prudential Ins. Co.* v. *Liberdar Holding Corp.* (72 F. [2d] 395) the Circuit Court of Appeals for the Second District appears to have taken a similar view as to the necessity of treating all the mortgaged properties of a group series as a single unit. Although the case did not involve a question of wrongful recoupments, the following language of the court is pertinent here (p. 399): " Again, in marshalling allowable expenses, each pool should be treated as a unit. The company, being charged as fiduciary for each pool separately, would be entitled to use the surplus rents of one parcel of land to keep down the taxes and other expenses of other parcels in the same pool; *indeed that would be its duty.*" (Italics this court's.) In the Columbia Law Review article, previously referred to, the opinion is likewise expressed that (p. 885) " in essence the deposited mortgages constituted one security, not

For the reasons indicated this court holds that the title company had no right to use for itself the rents or income of any of the mortgaged premises in the series while any of the mortgaged properties in the series were incumbered with unpaid taxes, assessments, water rates, etc. If the parties cannot agree as to the exact amount of the improper recoupments out of moneys received by the company under the rent assignments the question as to the correct amount will be remitted to the official referee who is to take proof in connection with that branch of the present application which relates to funds received under deposit agreements.

The petitioners also seek an order segregating the amounts wrongfully recouped. Until these amounts have been determined it is unnecessary to pass upon this branch of the motion, and the same will accordingly be held in abeyance. The motion is granted to the extent indicated. Settle order.