In the Matter of the Liquidation of NEW YORK TITLE AND MORTGAGE COMPANY (Series F-1).

Supreme Court, Additional Special Term, New York County, June 8, 1937.

*Wagner, Quillinan & Rifkind* and *Hektin, Rubin & Hektin*, for the trustees of Series F-1, for the motion.

*William A. Shea* [*Irving H. Jurow* of counsel], for the Superintendent of Insurance of the State of New York, as liquidator of the New York Title and Mortgage Company, opposed.

FRANKENTHALER, J.   The petitioners possess trust claims against the title company and its liquidator, arising from the company's wrongful recoupment of rents received from mortgaged properties while arrears of taxes, assessments and similar charges existed. (*Matter of New York Title & Mortgage Co.* [*Series F-1*], 162 Misc. 117; *Matter of New York Title & Mortgage Co.* [*Series F-1*], 163 id. 383.)   They now seek an adjudication that the claims for breach of trust held by them " are and constitute preferred claims " on the property of the title company in the possession of its liquidator, or, in the alternative, a determination as to " precisely what proof is to be required to entitle trust claimants to payment."

The gist of the petitioners' argument in support of their application that trust claims be accorded a preference is contained in the following quotation from the moving papers: " The conclusion appears to be inescapable that the task of tracing each remittance of rent into a particular corporate bank account of the guarantee company and further attempting to prove its ultimate receipt by the Rehabilitator, is so stupendous that some degree of proof less than this must be permitted in this proceeding if that, indeed, be required by the rules of law ordinarily applicable thereto.   Where a trust claimant succeeds in establishing the receipt of his particular trust moneys by the guarantee company, it is clear that the estate in process of liquidation has benefited to that extent.   If such trust funds had not been diverted from their proper purpose, namely, the payment of taxes, the guarantee company would have been forced to employ its other assets in order to make the payments to its creditors which came out of its bank accounts, enhanced

by such wrongful deposits. * * * When one bears in mind the complexity and difficulty entailed in a literal application of a strict requirement of tracing, it is clear that some different procedure must be followed * * * granting to these trust claimants a preference on the general assets of the guarantee company would be thoroughly in accord with principles of equity and justice, and would recognize the benefit which has accrued to the estate at large from the improper diversion of the trust moneys."

It appears to be the settled law of this State that trust claims are not entitled to preferences in insolvency proceedings merely because of their trust nature and without tracing the trust funds into the remaining assets. In the leading case of *Matter of Cavin* v. *Gleason* (105 N. Y. 256), the Court of Appeals, ANDREWS, J., writing the opinion, said (p. 262): "*It is clear, we think, that upon an accounting in bankruptcy or insolvency, a trust creditor is not entitled to a preference over general creditors of the insolvent, merely on the ground of the nature of his claim, that is, that he is a trust creditor as distinguished from a general creditor. We know of no authority for such a contention.* The equitable doctrine that as between creditors equality is equity, admits, so far as we know, of no exception founded on the greater supposed sacredness of one debt, or that it arose out of a violation of duty, or that its loss involves greater apparent hardship in one case than another, unless it appears in addition that there is some specific recognized equity founded on some agreement, or the relation of the debt to the assigned property, which entitles the claimant, according to equitable principles, to preferential payment. If it appears that trust property specifically belonging to the trust is included in the assets, the court, doubtless, may order it to be restored to the trust. So, also if it appears that trust property has been wrongfully converted by the trustee, and constitutes, although in a changed form, a part of the assets, it would seem to be equitable, and in accordance with equitable principles, that the things into which the trust property has been changed should, if required, be set apart for the trust, or if separation is impossible, that priority of lien should be adjudged in favor of the trust estate for the value of the trust property, or funds, or proceeds of the trust property, entering into and constituting a part of the assets. This rule simply asserts the right of the true owner to his own property. *But it is the general rule as well in a court of equity as in a court of law, that in order to follow trust funds and subject them to the operation of the trust, they must be identified.*" (Italics this court's.) In *Atkinson* v. *Rochester Printing Co.* (114 N. Y. 168) the same principle was expressed in the following language (p. 175): "The fact that the defendant

became a creditor of the insolvent bank through the fraud of its officers, and the bank a trustee *ex maleficio*, gave the defendant no right to a preference over other creditors unless it could trace and recover its property." In *Matter of People (Lawyers Title & Guar. Co.)* (265 N. Y. 20) the Court of Appeals affirmed an order of this court which appointed a referee for the purpose of tracing rents wrongfully recouped by the title company and mingled with its general funds. That the Court of Appeals recognized that tracing of the trust funds was necessary to entitle the trust claimant to payment is apparent from the following quotation from the opinion of Judge (now Chief Judge) CRANE (p. 29): "With this statement of our views we merely add that we agree, for the facts of this case, with the disposition of these funds. The $55,161.12 is a trust fund, now comingled with the company's general funds, so possibly cannot be traced. A referee has been appointed to make the attempt, and if he succeeds even then the amount will be paid only in proportion as there are assets to pay other trust funds of like nature. The $19,205.98 is to be paid over as it has been segregated."

In their reply brief the petitioners state that they do not really "claim the existence of a technical preferred claim." They acknowledge the necessity of tracing, but maintain that such tracing is successfully accomplished upon a mere showing that the title company received the trust funds in its general corporate cash, without establishing that the funds, in segregated or mingled form, still remain in the possession of the company or of its liquidator: "It is urged with all earnestness that the fact situation presented in this application is eminently one which calls for the adoption of the rule that where the Title Company received a particular trust fund in its general corporate cash, it shall be conclusively presumed that the assets reaching the Rehabilitator were enhanced *pro tanto* and that the trust claimants shall be accorded a prior lien on the general assets of the company, to that extent." The reasoning upon which this claim of *conclusive* presumption is predicated is stated as follows in the moving papers: "Where a trust claimant succeeds in establishing the receipt of his particular trust moneys by the guarantee company, it is clear that the estate in process of liquidation has benefited to that extent. If such trust funds had not been diverted from their proper purpose, namely, the payment of taxes, the guarantee company would have been forced to employ other assets in order to make the payments to its creditors which came out of its bank accounts, enhanced by such wrongful deposits." The same contention was made in *Matter of Cavin v. Gleason (supra)*, only to be decisively overruled by the

Court of Appeals (p. 263): " The courts below seem to have proceeded upon a supposed equity springing from the circumstance that by the application of the fund to the payment of White's creditors the assigned estate was relieved *pro tanto* from debts which otherwise would have been charged upon it, and that thereby the remaining creditors, if entitled to distribution, without regard to the petitioner's claim, will be benefited. We think this is quite too vague an equity for judicial cognizance, and we find no case justifying relief upon such a circumstance. In a very general sense all creditors of an insolvent may be supposed to have contributed to the assets which constitute the residuum of his estate." The authorities relied upon by the petitioners do not include any decision of the courts of our own State and are contrary to the weight of authority in this country. Although the requirement of tracing is satisfied when " it appears that the fund or property of the insolvent remaining for distribution, includes the proceeds of the trust estate " despite the fact that " it may be impossible to point out the precise thing in which the trust fund has been invested, or the precise time when the conversion took place," the " authorities require, at least, this degree of distinctness in the proof, before preference can be awarded." (*Matter of Cavin* v. *Gleason, supra,* p. 263.) Trust claimants are not entitled to priority in payment unless it appears not only that the trust funds were at one time in the possession of the insolvent, but also that the property still remaining in the possession of the insolvent includes the trust funds. There is no conclusive presumption in this State that trust funds received by an insolvent continue to remain in its possession down to the time for distribution of the insolvent estate.

It follows that in so far as the present application seeks an adjudication that the trust claims held by the petitioners are entitled to a preference, it must be denied.

The court sympathizes with the certificate holders who, although their funds have been wrongfully used by the title company for its general purposes, nevertheless are denied priority in payment and are obliged to share equally with general creditors in the distribution of the assets of the company. The court is, however, obliged to follow and apply the law as it has been laid down in repeated rulings of our appellate courts. If there is to be any change in the law relating to the rights of trust claimants to priority in the distribution of the assets of an insolvent, such a change must be made by our highest court. As to the request that the court formulate the precise requirements necessary to entitle the petitioners, as trust claimants, to payment of such trust claims, it need only be pointed out that it is impossible to state in advance, without

relation to any specific state of facts, the character and extent of the proof which must be adduced in order to make out a case of successful tracing. Although certain presumptions and rules have been established in aid of claimants seeking to trace trust funds and it may well be, as the petitioners urge, that all the bank accounts maintained by the title company are to be treated as one, the question of whether there has been a sufficient tracing of such funds into the possession of the title company and its liquidator is one which in the last analysis depends upon the facts of each particular case. The court should not attempt to announce and formulate in advance abstract principles as to what shall constitute sufficient tracing in all the various complicated factual situations which may arise.

For the reasons indicated, the motion is denied.