In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK by GEORGE S. VAN SCHAICK, as Superintendent of Insurance, for an Order to Take Possession of the Property of and Rehabilitate the LAWYERS WESTCHESTER MORTGAGE AND TITLE COMPANY.

FREDERICK H. HURDMAN et al., Comprising the Firm of HURDMAN & CRANSTOUN, Appellants; OLIVER W. BIRCKHEAD et al., as Trustees, et al., Respondents.

Argued November 27, 1941; decided April 23, 1942.

*Monroe J. Cahn* for appellants. The claims on the guaranty were constituted part of the trust estate by the declaration of trust and thereby the dividend thereon was rendered applicable to the payment of the debts of the trust estate. (*Cundill* v. *Millhauser Corp.*, 257 N. Y. 416; *Matter of Title & Mortgage Guaranty Co.*, 275 N. Y. 347; *Pink* v. *Thomas*, 282 N. Y. 10; *People* v. *Dethloff*, 283 N. Y. 309; *O' Neil Supply Co.* v. *Petroleum H. & P. Co.*, 280 N. Y. 50; *Becker* v. *Frasse & Co.*, 255 N. Y. 10; *Outlet Emb. Co.* v. *Derwent Mills*, 254 N. Y. 179; *Farmers L. & T. Co.* v. *Callan*, 246 N. Y. 481; *Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519; *Pfohl* v. *Simpson*, 74 N. Y. 137; *Guffanti* v. *National Surety Co.*, 196 N. Y. 452; *Tyndall* v. *Pinelawn Cemetery*, 198 N. Y. 217.) Chapter 745 of the Laws of 1933 constitutionally authorized the inclusion of the claim on the guaranty as part of the trust estate. (*Matter of People* [*Union Guaranty & Mortgage Co.*], 285 N. Y. 337; *Matter of People* [*Title & Mortgage Guar. Co.*], 264 N. Y. 69; *Matter of New York Title & Mortgage Co.*, 251 App. Div. 415; 277 N. Y. 66; *Preston Co.* v. *Funkhouser*, 261 N. Y. 140; 290 U. S. 163; *Kuehner* v. *Irving Trust Co.*, 299 U. S. 445; *Gelfert* v. *National City Bank*, 313 U. S. 221.)

*Charles Segal* and *William A. Davidson,* in person, for William A. Davidson et al., respondents. The claims on the guaranty were not class claims and did not constitute part of the trust estate. (*Mittlemann* v. *President & Directors of Manhattan Co.*, 248 App. Div. 79; 272 N. Y. 632; *Matter of New York Title & Mortgage Co.*, 257 App. Div. 19; *Rabinowitz* v. *President & Directors of Manhattan Co.*, 275 N. Y. 453; *Weil* v. *President & Directors of Manhattan Co.*, 275 N. Y. 238.) Chapter 745 of the Laws of 1933

did not authorize the inclusion of claims on the guaranty, as part of the trust estate. (*Weil* v. *President & Directors of Manhattan Co.,* 275 N. Y. 238; *Matter of New York Title & Mortgage Co.,* 257 App. Div. 19; *Mittlemann* v. *President & Directors of Manhattan Co.,* 248 App. Div. 79.)

*R. Emmet Digney* for Mount Kisco National Bank and Trust Company, respondent. The claims based upon the primary indebtedness of the mortgage company to the certificate holders do not constitute part of the trust estate. (*Matter of People [Title & Mortgage Guaranty Co.],* 264 N. Y. 69; *Mittlemann* v. *President & Directors of Manhattan Co.,* 248 App. Div. 79; 272 N. Y. 632; *Weil* v. *President & Directors of Manhattan Co.,* 275 N. Y. 238; *Brenner* v. *Title G. & T. Co.,* 276 N. Y. 230.)

*Oliver K. King* and *Bruce A. Hood* for Oliver W. Birckhead et al., as trustees, respondents.

RIPPEY, J. In 1931 the Lawyers Westchester Mortgage & Title Company issued and sold mortgage participation certificates in a bond and mortgage on Westchester real estate, known as Issue No. 5–7902, aggregating in face value $50,000, that being the principal amount of the security, and therein guaranteed to the holders of such participations payment of principal and interest at the rate of five and one-half per cent per annum. All of such guaranteed mortgage participation certificates were in identical language except as they varied in dates and amounts. On August 11, 1933, the Superintendent of Insurance was appointed rehabilitator of the title company and took possession of its business, property and assets under former article XI of the Insurance Law (Cons. Laws, ch. 28).

On June 7, 1935, an order of liquidation was made by the Supreme Court in accord with applicable statutes wherein it was provided, among other things, (1) that all creditors and holders of mortgage participation certificates guaranteed by the title company were enjoined and restrained from bringing or further prosecuting any action at law, suit in equity, special or other proceeding against the corporation or its assets, or against the Superintendent of Insurance, or his successors, or from making or executing any levy upon its assets, or in any manner interfering with the Super-

intendent in his possession, control or management of the property of the corporation, or in the discharge of his duties under article XI of the Insurance Law, (2) that all persons who had claims against the title company should be notified in the manner specified in the order to present such claims to the liquidator on or before October 15, 1935, which was fixed as the final date for presenting claims, and (3) that all claimants failing to file claims within the time required by the order should be barred from sharing in any distribution of the assets of the title company until all allowed claims, proof of which were filed on or before the last filing date, had been paid in full.

In special proceedings instituted by the Superintendent for the purpose of readjustment, modification or reorganization of the rights of the holders of the mortgage instruments represented by guaranteed mortgage certificates in the aforesaid mortgage, an order was made at an Additional Special Term of the Supreme Court for Westchester County, on April 23, 1935, upon the consent of ten certificate holders representing $34,500, or sixty-nine per cent of the issue, promulgating a plan therefor in accordance with the provisions of chapter 745 of the Laws of 1933, as amended (McKinney's Uncons. Laws [Book 65], §§ 1796–1805), known as the Schackno Act, and trustees were appointed of all the property of every description constituting the trust estate as defined in the declaration of trust which was annexed to the plan as promulgated. The declaration of trust defined the " Trust Estate " as including not only all property and choses in action of the title company properly applicable as security for Issue No. 5–7902 but also " all rights, claims and choses in action which the Certificate Holders *as a class* have or may have against Lawyers Westchester Mortgage and Title Company *upon its guaranty* of said Certificates and /or of the bond(s) and mortgage(s) underlying the same " (Italics ours). Among other things, the declaration of trust also provided that the trustees were " vested with all the rights and powers of absolute owners of the Trust Estate * * * and " may, *in their discretion,* exercise any and all of the following rights and powers: * * * (j) Enforce any and all rights and claims which the Certificate Holders *as a class* may have against the Lawyers Westchester Mortgage and Title Company, its officers, directors and employees and against any other

corporation, person or persons, including *all rights and claims upon the guaranty* and upon all other agreements contained in Issue No. 5–7902 Certificates " (Italics ours). Asserting that the certificate holders had claims " as a class " upon the guaranties and exercising their option under the declaration of trust, the trustees filed a claim for the holders of the guaranties *as a class* and also for each individually on his separate guaranty with the liquidator. On October 10, 1935, the class claim was allowed by him and approved by the court in the amount of $56,171.37, and the Superintendent of Insurance was authorized by the court to distribute dividends thereon to the trustees as the liquidation of the title company progressed. A dividend of five per cent has been declared. It arose out of the liquidation of general assets of the title company, not out of liquidation of the securities underlying the participation certificates of Issue No. 5–7902.

In the meantime the trustees resigned and successor trustees were duly elected who qualified and entered into possession and control of the property of the trust estate with the exception of certain cash retained by the original trustees for the purpose of paying administration expenses. Upon an accounting by the original trustees, an order was made on June 14, 1938, settling their accounts and directing payment of various claims then alleged to be due creditors (including appellants) as expenses of administration which were directed specifically *to be a charge upon, and to be paid in full out of, the assets of the trust estate.* The amounts so allowed and directed paid were not broken down into separate items so as to indicate what part, if any, might, perhaps, be properly allocable for services of claimants to, and a charge upon, dividends payable to the various holders of the contracts of guaranty. The dividend of five per cent on the contracts of guaranty was paid by the Superintendent of Insurance to the successor trustees less foreclosure costs of the mortgage and service fees incurred in servicing the mortgaged property accruing during the period from August 11, 1933, to August 25, 1935, while the bond and mortgage was still in the possession and under the control of the Superintendent of Insurance. Creditors and employees of the trustees who allegedly performed services in the administration of the trust estate also demanded payment of their claims as allowed by the

court in its order of June 14, 1938, out of the dividend on the theory that the dividend was part of the trust estate. Thereupon, the successor trustees petitioned the Additional Special Term for instructions concerning distribution of the fund arising out of the dividend, making creditors (including appellants) whose claims had been allowed and directed paid out of the assets of the trust estate in the order settling the accounts of the original trustees and other claimants parties to the proceeding. Upon the hearing on that petition it was held that the dividend fund was not subject to the payment of the foreclosure costs and servicing fees or to the payment of the claims of appellants and other claimants and an order was entered to that effect. The court directed the Super-intendent of Insurance to pay to the trustees the amount he had deducted from the dividend. No party has appealed from that order except appellants, the firm of Hurdman & Cranstoun, account-ants who rendered services to the trustees in connection with their administration of the trust estate, the value of which services, including those rendered in the preparation and prosecution of the claim of guaranty holders, has been fixed by the court. The Appellate Division unanimously affirmed the order and granted leave to appeal to this court.

The decisive question to be answered is whether the dividend received by the trustees upon the guaranty claims constitutes part of the trust estate which they were authorized to receive and distribute under the deed of trust and the orders of the court. If (1) the provision of the deed of trust authorizes the trustees to prosecute the rights of the certificate holders *as a class* against the guarantor and liquidate their claims and (2) the Schackno Act authorizes the formulation of a plan which includes a transfer of, and the exercise of power to enforce, such rights, the dividend now in the hands of the trustees constitutes a part of the trust estate and is subject to payment of appellants' claim. The wording of the plan and declaration of trust is clear and unambiguous. In such a case the intent of the parties, which is the decisive factor in a determination of the relative rights and obligations of the parties to written instruments, is to be found in the words which the parties themselves employ to express that intent. From the words used it seems clear that the parties intended that the trustees

should take over, manage and liquidate the contracts of guaranty as well as the participations in the underlying security. By apt words, the definition contained in the declaration of trust, to which we have referred above, leaves no doubt that the trust estate included all rights, claims and choses in action which the certificate holders as a class had against the guarantor upon its guaranty and that the trustees were authorized to enforce any and all such rights and claims.

To sustain the decisions of the courts below, stress is laid upon the words " as a class " and it is said that the rights under the guaranty do not belong to the certificate holders *as a class*. Reliance is placed upon our decisions in *Mittlemann* v. *President and Directors of Manhattan Co.* (272 N. Y. 632) and *Weil* v. *President and Directors of Manhattan Co.* (275 N. Y. 238) as establishing that a class action cannot be maintained in behalf of all the certificate holders to enforce the guaranty. But the intent of the interested parties was that the trustees should be empowered and obligated to act for the holders of the guaranty contracts in the matter of collecting their claims against the guarantor. In neither the *Mittlemann* nor the *Weil* case did this court hold that all of the certificate holders could not enforce their guaranties in a class action. In neither case was the action brought to enforce the contract of guaranty. Both actions were brought to enforce tort liabilities allegedly arising from wrongs which caused damage to the holders of the certificates at the time the torts were committed. The question before us is not whether, technically, a class action could be brought, but whether the certificate holders' rights belong to them as a class *within the meaning of* the trust indenture and *intent* of the parties. The words " as a class " are not a term of art and, even if they were, they would necessarily yield to a contrary meaning if that were indicated by the context (*Cundill* v. *Millhauser Corp.*, 257 N. Y. 416, 422). The claims arising by reason of the guaranties were unmistakably identified in the declaration of trust as claims which might be enforced by the trustees. Whether otherwise they might be enforced by the individual certificate holders or by the certificate holders as a class is beside the point. It is, of course, true that each certificate holder acquired an individual right to enforce his guaranty contract when he purchased his certificate, but in the

declaration of trust here involved it is clearly indicated that the words " as a class " were used merely in the sense that the claims were common to all certificate holders.

In the declaration of trust and under all the circumstances of the case heretofore adverted to, the trustees obligated themselves to present and prosecute the claims at least of those assenting to the plan existing by virtue of the contracts of guaranty. They would not have been justified in taking no action at all in behalf of the guaranty holders. Subsequent to its execution by the trustees, by implication and ratification, all those not originally parties to it became bound by its terms. The claim was filed for all and enured to the benefit of all and all holders of guaranteed participation certificates now seek their *pro rata* share of the dividend procured by the trustees. Aside from the question, which we are presently to consider, whether the plan and declaration of trust were authorized by the provisions of the Schackno Act, those not originally consenting cannot now complain (*Buford* v. *Tobacco Growers' Co-op. Assn.*, 42 Fed. Rep. [2d] 791, 792).

The Schackno Act provides that the Superintendent of Insurance may promulgate a plan or agreement for the readjustment, modification or reorganization of the rights of all the holders of such mortgage investments (L. 1933, ch. 745, §§ 1 and 6 [1]; now McKinney's Uncons. Laws [Book 65], §§ 1796 and 1801). Under the existing emergency the inadequate remedies of certificate holders under previous laws were specifically recognized. It was " declared to be essential for the public interest to provide a procedure under which such bonds, mortgages or other security may be liquidated in an orderly manner and under which the assets of the guaranty corporations may be administered and conserved equally and ratably in the interests of holders of mortgage investments." " Mortgage investments " as used in the statute include " all interests in bonds, notes and other evidences of indebtedness of individuals, partnerships, associations or corporations, secured by mortgage or mortgages upon, or deed or deeds of trust or similar evidences of an interest in, real property, situated in this state or outside of this state, guaranteed by a guaranty corporation, and all collateral trust bonds or notes of a guaranty corporation which are secured by pledge or assignment of any such interest; but shall not include any such bond, note

or other evidence of indebtedness when the same shall be held entirely by only one person, firm or corporation or any such collateral trust obligations when all of them having the same security are held entirely by only one person, firm or corporation." The Superintendent of Insurance is authorized to " take over, administer, exercise, conduct, execute and manage, or he may restrict, limit, govern, control, direct and regulate, any or all of the functions of any guaranty corporation with respect to any mortgage investment sold or guaranteed by such guaranty corporation, whenever in his opinion such action is necessary or advisable for the protection of such guaranty corporation or of the holders of such mortgage investment, in the event (1) that such guaranty company has been taken over by the superintendent for rehabilitation or liquidation, or (2) that there is a default under such mortgage investment, or under any bond, mortgage or other security against which such mortgage investment has been issued " (L. 1933, ch. 745, §§ 2 and 3; now McKinney's Uncons. Laws [Book 65], §§ 1797 and 1798).

It was to the interest of the holders of such investments, which the Legislature by statute has undertaken to safeguard, to have the assets of the guaranty corporation administered and conserved equally and ratably for their benefit (L. 1933, ch. 745, § 1, now McKinney's Uncons. Laws [Book 65], § 1796). There could be no assurance to the certificate holders of a ratable distribution of the assets of the insolvent corporation if each were to prosecute an action upon his own certificate alone. There must necessarily be proof of the value of the underlying mortgage which had been guaranteed before the claims of the certificate holders could be determined. Each certificate holder has a definite share in the guaranteed mortgage and has a claim against the guarantor upon its guaranty, the amount of which can be calculated only after the value of the mortgage has been fixed. Varying values of the mortgaged premises may be offered in separate actions upon the claims of the several certificate holders and different determinations made as to such value. Not only would separate actions by individual guaranty holders involve confusion and a multiplicity of actions but such procedure would impose upon each or upon many of them prohibitive burdens and costs. It was consequently reasonably within the purpose and intent of the statute that the Superintendent of Insurance

should procure an order, as he did in the order of liquidation, enjoining the holders of guaranties from bringing any action at law or other proceeding to enforce their claims under the guaranties and subsequently procure in the adopted plan a provision for a trust indenture which would establish an orderly mechanism for the presentation and enforcement of their common claims. Although the scope of the language of the statute may not be changed or enlarged by the court, nevertheless, we may not restrict its scope in a manner which would thwart the declaration of legislative policy if the language of the statute is susceptible of other reasonable construction.

In view of those considerations and the declared legislative purpose, the language of the statute may not be so narrowly construed as to bar the enforcement of rights of all holders of contracts of guaranty against an insolvent guaranty corporation through proceedings instituted for the benefit of all. The certificate holders had no vested right to any individual remedy on the guaranty where the guarantor was insolvent and was being liquidated (*Preston Co.* v. *Funkhouser,* 261 N. Y. 140; affd., 290 U. S. 163). The statute did not go so far as to authorize a plan of reorganization which would alter the contract rights of the holders of the guaranties, but provided merely for the orderly and uniform enforcement of the obligation by authorizing the vesting of the power of enforcement in trustees. This, the Legislature had power to do (*Matter of People [Title & Mortgage Guarantee Co.],* 264 N. Y. 69, 82; *Honeyman* v. *Hanan,* 302 U. S. 375, 378).

It follows not only that the declaration of trust authorized, empowered and obligated the trustees to enforce the common claims of the holders of the contracts of guaranty against the obligor, but that those provisions of the declaration of trust were authorized by the provisions of the Schackno Act.

The orders should be reversed, with costs to the appellant in all courts and the matter remitted to the Special Term to proceed in accordance with this opinion.

LEHMAN, Ch. J., LOUGHRAN, FINCH, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.