FREDERICK W. HAMBERG, as Trustee of Mortgage No. 720 of Guaranteed Mortgage Company of New York, et al., Plaintiffs, *v.* GUARANTEED MORTGAGE COMPANY OF NEW YORK et al., Defendants.

Supreme Court, Special Term, New York County, November 24, 1942.

*Joseph S. Resnick* and *Josephine Zafonte* for Frederick W. Hamberg, as trustee, and Miles S. Whitney and D. J. Pastorello, as trustees, plaintiffs.

*Maurice B. Blumenthal* for Daniel W. Blumenthal, as trustee, et al., plaintiffs.

*Ralph W. Crolly* and *Stanley S. Hawkes* for Brooklyn Trust Company and Miles S. Whitney, as trustees, plaintiffs.

*Edward A. Kimmel* for George M. Jaffin, as trustee, plaintiff.

*George L. Livingston* and *M. Michael Kleinberg* for defendants.

WALTER, J. Guaranteed Mortgage Company of New York was incorporated under the Banking Law of New York and engaged

in the business of selling to the public guaranteed mortgages and guaranteed mortgage participation certificates, i. e., the whole of and part interests in mortgages on real estate, the payment of the principal and interest of which it guaranteed. It is not shown that it ever engaged in any other business. On December 31, 1934, the Superintendent of Banks of New York took possession of its business and property and then proceeded with the liquidation thereof. Notice was given to creditors to make proof of claims, and after rejection of the claims submitted by these plaintiffs, all based upon such guarantees, these actions were brought to obtain judgments for the amounts unpaid upon the mortgages and participation certificates at the time the Superintendent took possession. See Banking Law, sections 606, 620, 625, 626; and see, also, *Isaac* v. *Marcus* (258 N. Y. 257, 263) and *Zuroff* v. *Westchester Trust Co.* (273 N. Y. 200), as to the status of the Superintendent. The actions have been consolidated and the Superintendent moves for judgment.

While in form a motion under rule 113 of the Rules of Civil Practice for summary judgment dismissing the complaints, the facts admitted make it clear that some, at least, of the plaintiffs are entitled to judgment for some amount, and what really is sought is an adjudication of various legal questions which must be decided before the Superintendent can complete the liquidation.

1. The most important of those questions is whether, the guarantor being insolvent, the plaintiffs may have judgments for the full amounts unpaid or whether there must be deducted therefrom the value of the mortgage or participating interest to which the guarantee relates, or, in cases where the mortgage has been foreclosed, the value of the realty acquired upon foreclosure, or, in cases where partial payments have been made, the value of such partial payments.

Concededly, the rule generally applicable where the assets of an insolvent are being administered for the benefit of creditors is that, in the absence of a statute to the contrary, creditors who hold security may prove for the full amount of their claims without regard to the security. (*People* v. *Remington & Sons*, 121 N. Y. 328; *Matter of Simpson*, 158 N. Y. 720, affg. 36 App. Div. 562; *McGrath* v. *Carnegie Trust Co.*, 221 N. Y. 92; *Matter of People* [*Southern Surety Co.*], 282 N. Y. 54, 62.) Concededly, also, the Federal Bankruptcy Act (U. S. Code, tit. 11), under which the value of security is to be deducted provided the security consists of property of the bankrupt (*Ivanhoe Building Assn.* v. *Orr*, 295 U. S. 243), is not here applicable *ex proprio vigore.* There are, however, two New York statutes which require that the value of security be deducted, one contained in

the Insurance Law and the other in the Debtor and Creditor Law, and the answer to the question depends upon the application and scope of those statutes.

Section 544 of the Insurance Law of 1939 (L. 1939, ch. 882), and also its predecessor, section 425 of the Insurance Law of 1909 (as amd. by L. 1932, ch. 191), are contained in an article dealing with " delinquent insurers " and expressly made applicable not only to corporations organized under or generally subject to the Insurance Law, but, also, to all corporations " which are doing or attempting to do or representing that they are doing the business of insurance " (L. 1939, ch. 882, art. 16, § 510; L. 1932, ch. 191, art. 11, § 400), and there can be no doubt that in guaranteeing mortgages, regularly and as its sole business and as " an extraneous inducement to procure sales " of such mortgages, this guarantor was doing such business. (*Ollendorff Watch Co.* v. *Pink,* 279 N. Y. 32, 36.) " The guaranty of payment of the principal and interest of mortgage loans constitutes insurance." (*United States* v. *Home Title Ins. Co.,* 285 U. S. 191, 195; and see, also, *Bowers* v. *Lawyers Mortgage Co.,* 285 U. S. 182, 189; *Matter of Union Guarantee & Mortgage Co.,* 75 F. 2d 984, affg. 8 F. Supp. 281, 282.) I accordingly conclude that section 544 is applicable to claims against this guarantor, despite the fact that this guarantor was organized under the Banking Law instead of the Insurance Law and is being liquidated by the Superintendent of Banks instead of by the Superintendent of Insurance. If any doubt existed on that point under the former section 425, it is removed by the fact that by section 510, article 16 of the Insurance Law of 1939, which contains the present section 544, is made applicable also to all corporations which are " subject to examination or supervision under any section of this chapter [the Insurance Law] or under any law of this state," and the further fact that section 41 thereof defines the term " doing an insurance business " as including " the making, as guarantor or surety  *  *  *, of any contract of guaranty or suretyship as a vocation and not as merely incidental to any other legitimate business or activity of the guarantor or surety."

That some of the claims against this guarantor antedate the enactment of these statutes is immaterial. The change from former law which they effect does not transcend " the scope of the normal control over judicial remedies which the contracts clause of the Federal Constitution has left to the States " (Loughran, J., in *National City Bank* v. *Gelfert,* 284 N. Y. 13, 17), and upon this question, the law existing at

the time of decision is to be applied. (*Carpenter* v. *Wabash Ry. Co.*, 309 U. S. 23; *Gelfert* v. *National City Bank*, 313 U. S. 221, revg. *National City Bank* v. *Gelfert*, 284 N. Y. 13; *Robinson* v. *Robins Dry Dock & Repair Co.*, 238 N. Y. 271; *Matter of Kahn* [*National City Bank*], 284 N. Y. 515, 523; *Matter of Bailey* v. *Bush Terminal Co.*, 178 Misc. 1045, 1049-1052.)

I am not to be understood as holding that all provisions of article 16 of the Insurance Law are applicable to the liquidation of a corporation organized under the Banking Law and being liquidated by the Superintendent of Banks merely because the corporation was doing the business of insurance. I now assume that to the extent to which the Banking Law itself specifically regulates the liquidation of corporations by the Superintendent of Banks those regulations, rather than the provisions of article 16 of the Insurance Law, are controlling, and go no further than to hold that in a specific instance in which the Banking Law itself is silent, resort is to be had to an applicable provision of article 16 of the Insurance Law rather than to a general rule laid down by the courts as the one to be applied in the absence of an applicable statute to the contrary.

Plaintiffs argue that they are not secured creditors because they do not have as security any property of the debtor against which they assert their claims (see *Ivanhoe Building Assn.* v. *Orr, supra*), but so far as concerns section 544 of the Insurance Law I regard that point as settled against them by *Matter of New York Title & Mortgage Co.* (160 Misc. 67, 79, 80, affd. 251 App. Div. 415, 419, revd. 277 N. Y. 66). It was there expressly ruled by this court, upon very elaborate consideration, that the result reached in the *Ivanhoe* case (295 U. S. 243, *supra*) was due to a definition of " secured creditor " appearing in the Federal Bankruptcy Act which is narrower than the usual and ordinary meaning of that term and which was not adopted in the Insurance Law, and that claims upon guarantees of mortgages and participations therein are secured claims within the meaning of the Insurance Law. (160 Misc. 67, 79, 80.) Upon the appeals in that case the discussions related entirely to the question as to how the security was to be valued, but as it obviously was pointless to consider how security should be valued unless there was security to be valued I cannot regard the decision of the Court of Appeals in that case as other than in effect an affirmance of the ruling that " secured creditor " does not have the same meaning under the Insurance Law which it has under the Federal Bankruptcy Act and that the claims here involved

are " secured claims." (277 N. Y. 66.) I am aware that in *Matter of People* (*Southern Surety Co.*) (282 N. Y. 54, 62) the Court of Appeals referred to section 425, subdivision 5, of the Insurance Law as an adoption of the " Bankruptcy Rule," but the reference was simply to the " Bankruptcy Rule," in contrast with the " Chancery Rule," under which security does not have to be deducted, and, as the security in that case consisted of property of the debtor, there was nothing in the case which directed attention to or called for a statement of the qualification of the bankruptcy rule illustrated by the *Ivanhoe* case. In short, the reference to the " Bankruptcy Rule " was entirely *obiter*, and I cannot regard the reference in that case as an intentional construction of the exact scope of section 425 or take it as unsettling what was in effect settled by *Matter of New York Title & Mortgage Co.* (277 N. Y. 66, *supra*). (See *Dougherty* v. *Equitable Life Assur. Soc.*, 266 N. Y. 71, 88; *Adamec* v. *Post*, 273 N. Y. 250, 257.)

There remains for consideration, however, the recently enacted article 2-A of the Debtor and Creditor Law (L. 1942, ch. 876, eff. May 18, 1942). That article, with two exceptions presently to be noted, is an adoption of the " Uniform Act Governing Secured Creditors' Dividends in Liquidation Proceedings " drafted by the Commissioners on Uniform State Laws, who specifically state that in drafting that Act they adopted the bankruptcy rule as the only one likely to be generally accepted by the legislatures of the several States and who describe their definition of " secured creditor " as being derived from the Federal Bankruptcy Act. (See 9 Uniform Laws Annotated, 1942 ed., p. 21 *et seq.;* Report, American Bar Assn. 1939, pp. 468, 111.) Quite obviously, therefore, New York now has adopted the bankruptcy rule in its entirety, i. e., the rule that the value of security is to be deducted only in the event that the security consists of property of the debtor. In adopting that rule, however, our Legislature inserted one important exception not contained in the Commissioners' draft, for in the definition of " liquidation proceeding " as embracing any proceedings " for distribution of assets of any insolvent debtor " it added the words " except proceedings under article sixteen of the Insurance Law." (Debtor and Creditor Law, § 30.) Another change made by our Legislature is that, whereas the Commissioners' draft provided " This act shall take effect * * * but shall not apply to contracts and transactions already existing upon that date," the law as enacted in New York provides: " In all liquidation proceedings pending on the effective date hereof.

the value of secured creditors' claims shall be determined in the manner provided by this article." I think that provision is effective (*Carpenter* v. *Wabash Ry. Co.*, 309 U. S. 23, and other cases above cited in connection therewith), but if the actions now before the court are to be deemed " proceedings under article sixteen of the insurance law," then the new article 2-A does not apply to them and the effect of its definition of secured creditors upon the claims here involved need not be considered.

Under the scheme of liquidation provided in the Banking Law separate actions upon separate claims may be brought, but such actions do not result in judgments creating liens and enforcible by execution, and in essence such actions, like actions against executors and administrators, are merely a means by which an adjudication of the validity and amount of the claim is obtained in order to establish a right to share in the assets in the hands of a fiduciary, and they hence are mere steps in a liquidation proceeding. (Banking Law, § 626; *Lafayette Trust Co.* v. *Beggs*, 213 N. Y. 280; and compare *Matter of New York Title & Mortgage Co.*, 251 App. Div. 415, 420; *Prudential Ins. Co. of America* v. *Land Estates*, 110 F. 2d 617; *Waterman* v. *Canal-Louisiana Bank & Trust Co.*, 215 U. S. 33, 44-46; *Riehle* v. *Margolies*, 279 U. S. 218, 223, 224; *United States* v. *Bank of New York & Trust Co.*, 296 U. S. 463, 478.) Whether or not they are steps in a liquidation proceeding " under article sixteen of the insurance law " is perhaps not quite so obvious, but to my mind it is entirely clear that they are. Article 2-A of the Debtor and Creditor Law deals exclusively with the subject of deducting the value of security in liquidation proceedings, and I can perceive no reason for excluding proceedings under article 16 of the Insurance Law from its operation other than the express purpose of preserving unimpaired the rule on that subject which then prevailed under subdivision 6 of section 544 of the Insurance Law. It is a fair assumption that the Legislature was familiar with the many liquidations of mortgage guarantee companies which had been carried on under that section and its predecessor section 425, and familiar, also, with the rule which had been established in *Matter of New York Title & Mortgage Co.* (277 N. Y. 66, *supra*), and it seems to me quite evident that it made the exception because convinced of the justice of treating claimants upon guarantees of mortgages as secured claimants. In any event, if it intended to make a single rule, uniformly applicable to all cases, it would have enacted article 2-A in the form in which it was drafted by the Commis-

sioners on Uniform State Laws and would not have added the exception. I am thus unable to resist the conviction that its exception of "proceedings under article sixteen of the insurance law" is an exception of all proceedings which, with respect to the deduction of the value of security, are governed by that article.

I conclude, therefore, that with respect to such deduction these actions are governed by subdivision 6 of section 544 of article 16 of the Insurance Law, that article 2-A of the Debtor and Creditor Law consequently is not applicable, and that all plaintiffs herein are "secured creditors" and must credit upon their claims the value of the mortgage (or share therein), or the value of the realty if acquired, or the amount of any partial payments, in accordance with *Matter of New York Title & Mortgage Co.* (277 N. Y. 66, *supra*).

2. Another question argued is with respect to interest upon the plaintiffs' claims. Interest which had accrued on December 31, 1934, when the Superintendent took possession, is to be added to the amount of principal then unpaid, and the resulting total is "the value of the claim without security" from which "the value of the security itself as of" that date is to be deducted. (Insurance Law, § 544, subd. 6.) Interest after that date is to be disregarded in computing the amount upon which liquidating dividends are to be paid not because claims against an insolvent do not bear interest, as is erroneously stated in defendants' brief, but because the principle that equality is equity requires that, as a rule of administration, interest be not allowed on claims against the fund in the hands of a liquidator for distribution where, as here, that fund is insufficient to pay all creditors in full. (*Matter of People* [*Norske Lloyd Ins. Co.*], 249 N. Y. 139, 146, 147; *Matter of People* [*First Russian Ins. Co.*], 253 N. Y. 365; *People* v. *American Loan & Trust Co.*, 172 N. Y. 371, 377, 378.)

It does not follow, however, that such plaintiffs as have received, from sources other than assets of the guarantor in the hands of the Superintendent, interest which accrued since December 31, 1934, must credit the amounts so received upon "the difference between the value of the claim without security and the value of the security itself," which, under the express language of section 544, subdivision 6, is the amount at which the claims are to be allowed. The security, the value of which is to be deducted, is itself an interest-bearing security, at least in the instances where the security remains in the form of a mortgage not foreclosed, and when the plaintiffs receive

interest on such mortgages it is quite true that, in a certain sense, they are receiving something from their security; but even so they do not thereby reduce the amount actually owing by the guarantor upon its guarantee because, as the cases last cited show, interest runs against the guarantor during the liquidation and plaintiffs are entitled to receive and retain such interest so long as they get it from a source other than assets in the hands of the liquidator for distribution to all creditors. It may be that the fact that interest upon a mortgage has been paid is a factor to be considered in fixing the value of such mortgage, but to require the crediting of such interest in addition to deducting the value of the mortgage would result in double crediting and would be contrary to section 544, subdivision 6, as well as contrary to the rule clearly stated in the cases last cited that interest continues to run against the debtor during liquidation even though it is not allowed on claims against the fund being distributed. (See, also, *Ticonic Bank v. Sprague*, 303 U. S. 406.)

3. Some of the plaintiffs are individual owners of participation certificates in mortgages of which trustees have been appointed in reorganization proceedings under the Schackno Act. (L. 1933, ch. 745, as amd.) Such trustees are authorized, empowered and obligated to enforce the claims of such individual owners and to receive and distribute such dividends as are payable in respect of the guarantees of such mortgages (*Matter of People [Lawyers Westchester Mortgage & Title Co.]*, 288 N. Y. 40, 46, 50), and it accordingly follows that, in all instances in which the trustees have filed claims and brought actions in respect of such guarantees, the claims and actions of individual owners of participation certificates must be disallowed. If any trustee has failed to file a claim and bring an action, the action brought by individual owners may be maintained for the benefit of all upon appropriate amendment being made to show the failure of the trustee to sue. (See *Birn v. Childs Co.*, 37 N. Y. S. 2d 689.)

4. Some of the actions are based upon guarantees of mortgages, part interests in which are owned by the guarantor. Concededly, in any distribution of proceeds of sale of the mortgaged property, the guarantor would not be entitled to share *pro rata* with the owners of other interests in the mortgage and would be entitled to nothing until such other owners received payment in full. (*Matter of Title & Mortgage Guaranty Co. of Sullivan County*, 275 N. Y. 347; *Pink v. Thomas*, 282 N. Y. 10; *Matter of Lawyers Title & Guaranty Co.*, 287 N. Y. 264; *Matter of Guaranteed Mortgage Co. of New York*, 169 Misc.

26.) Yet, upon some strange theory, incomprehensible to me, it is contended that the trustees of such mortgages can have judgment for and receive liquidating dividends upon the entire amount of the mortgage, including the interest of the guarantor therein, and distribute such dividends to the owners of the other interests. That is equivalent to saying that the guarantor guaranteed payment to itself, and upon its own contract of guarantee owes to itself the amount of its own part interest in the mortgage, and that the amount of such debt to itself may be used to augment dividends upon debts which it owes to others. The mere statement of such a claim is sufficient to demonstrate its absurdity. Needless to say, the cases of *Matter of Home Title Ins. Co.* (255 App. Div. 635) and *Matter of Lawyers Mortgage Co. [Serviced Equities]* (168 Misc. 762), which are cited in support of the contention, do not in any way sustain it. The amount of any share of any mortgage owned by the guarantor consequently is to be deducted from the amount of the claim upon the guarantee of any such mortgage.

5. Plaintiffs in one of the actions assert that on various dates between November 16, 1928, and January 3, 1933, the guarantor received from the owner-mortgagor various sums aggregating $61,603.50, which it retained for itself in repayment of $59,946 of interest which it had advanced to holders of participation certificates before it actually received payment of such interest from the owner-mortgagor and in payment of $1,657.50 of so-called premiums or service charges under its contract of guarantee. At those times the guarantor had not made default in its contract of guarantee, and such repayment of interest so advanced was in accordance with expectations and custom well-known and now judicially recognized, and it must now be regarded as settled that such repayment was proper, even though there may have been unpaid taxes upon the mortgaged premises. (*Matter of People [Lawyers Title & Guaranty Co.]*, 265 N. Y. 20, 26, 27; *Matter of People [Bond & Mortgage Guarantee Co.]*, 245 App. Div. 744, affd. 270 N. Y. 527; *Matter of New York Title & Mortgage Co. [Series F-1]*, 163 Misc. 383, 386, 387.) There is no evidence that under its contract the guarantor was not entitled to the so-called premiums or service charges of $1,657.50, and the same conclusion must follow as to that item. The claim as to the $61,603.50 consequently must be disallowed.

6. Plaintiffs in one of the actions further assert that on March 15, 1933, the guarantor took an assignment of rents of the property covered by one of the guaranteed mortgages, and that out of moneys received under such assignment the guarantor, at a time when there were unpaid taxes upon the mort-

gaged property, paid to itself $117.70 as interest on its own share or interest in the mortgage, and $253.85 and $264.55 for premium or service fee. Such rents constitute funds received in trust for certificate holders other than the guarantor, and the three sums above mentioned, aggregating $636.10, constitute a trust claim against the guarantor and the liquidator (*Matter of People [Lawyers Title & Guaranty Co.]*, 265 N. Y. 20, 29; *Matter of People [New York Title & Mortgage Co.]*, 265 N. Y. 30; *Matter of New York Title & Mortgage Co. [Series F-1]*, 162 Misc. 117; *Matter of New York Title & Mortgage Co. [Series F-1]*, 163 Misc. 454), but as the funds so received and used have not been identified and traced into the possession of the liquidator, the mere character of the claim as a trust claim does not warrant the granting of any preference with respect to it. (*Matter of New York Title & Mortgage Co. [Series F-1]*, 163 Misc. 454; *Matter of Cavin* v. *Gleason*, 105 N. Y. 256, 262; *Matter of Hicks*, 170 N. Y. 195, 198; *Madison Trust Co.* v. *Carnegie Trust Co.*, 215 N. Y. 475, 482.) The $636.10 can be allowed as a general claim only.

7. In certain instances the mortgages guaranteed have been foreclosed. Costs incident to such foreclosures and moneys paid in clearing tax arrears do not give rise to additional claims against the guarantor. They are merely items to be considered in arriving at the value of the security to be deducted, in accordance with the rules laid down in *Matter of New York Title & Mortgage Co.* (277 N. Y. 66, *supra*).

8. The plaintiffs in Action No. 10 allege that on January 2, 1932, the guarantor received $1,000 on account of principal of one mortgage and paid the same to the holder of one participation certificate instead of distributing it *pro rata* to all holders of all participation certificates outstanding in respect of that mortgage. That, however, does not give rise to an additional claim against the guarantor in liquidation. On the contrary, the allegation is in effect an admission that that $1,000 has been paid on account of the mortgage and thus should be credited as such in calculating the claim upon the guarantee. The one holder who received the $1,000 may be liable to account therefor to the other holders of shares in the same mortgage, but that is a matter wholly between the trustee of that mortgage and the holders of the different shares thereof.

9. The plaintiffs last mentioned further allege that between January 2, 1932, and July 2, 1933, the guarantor charged, and deducted from interest received on their mortgage, a service fee which was " unreasonable, unfair, and inequitable," but no evidence or argument has been presented in support of the

allegation, nor even a computation showing the amount of the alleged excess. That claim is accordingly disallowed. In no event would it constitute an administration claim, because administration did not commence until December 31, 1934. Neither would it be entitled to preference as a trust claim, the alleged excess not having been identified and traced. (See cases under paragraph 6, *supra.*)

10. The same plaintiffs further allege that between January 2, 1932, and August 1, 1938, there was paid to the guarantor $8,237.82 as principal and interest on its '' equity '' in the mortgage held by those plaintiffs, by which I suppose is meant the share or interest in that mortgage retained and owned by the guarantor. Again no evidence is presented in support of the allegation. It is not even alleged from whom or how the $8,237.82 was received, nor is there any statement as to what part was received before and what part after the date the Superintendent took possession and commenced liquidation. There thus being no factual showing which would enable the court to make a correct determination, that part of the claim is disallowed.

The foregoing is believed to cover all the points raised.

Upon the argument it was suggested that, if the court conclude that the value of security is to be deducted, a reasonable time should be allowed for the parties to agree upon the valuations. The suggestion is in every way commendable. The facts remain, however, that many of the plaintiffs are trustees, and each claimant is interested in the valuation placed upon the security of every other claimant, and my understanding of *Matter of New York Title & Mortgage Co.* (257 App. Div. 19) is that the valuations must be approved by the court. In order, therefore, that the court may be properly advised it seems desirable to follow the procedure in that case and appoint a referee. Such appointment will not in any way deter agreements. On the contrary, it is believed that it will facilitate the making of agreements and at the same time afford a means of promptly disposing of disputed points and of furnishing the court with the information it should have in order properly to pass upon such agreements as are arrived at.

The court is further informed that other similar actions are pending upon other similar claims. Those other actions may be consolidated with the consolidated action now before the court or similar judgments can be presented referring them to the same referee, to the end that all questions of valuation may be passed upon at the same time.

Settle judgment accordingly.