In the Matter of the Rehabilitation of NEW YORK TITLE AND MORTGAGE COMPANY.

In the Matter of a Plan for the Readjustment of Series F-1.

In the Matter of the Judicial Settlement of the Account of Proceedings of AARON RABINOWITZ, JAMES L. CLARE and LAWRENCE N. MARTIN, as Trustees under a Declaration of Trust dated the 13th day of May, 1935, and a Plan of Reorganization for Series F-1 Mortgage Investments Approved by an Order of the Supreme Court of the State of New York Made on the 8th day of April, 1935, for the Period Ending December 31, 1936.

Supreme Court, Additional Special Term, New York County, June 8, 1937.

*Wagner, Quillinan & Rifkind* [*Simon H. Rifkind* and *Sidney R. Nussenfeld* of counsel], for the trustees of Series F-1.

*Kramer & Kleinfeld* [*Barnet Kaprow* and *David L. Weissman* of counsel], for the trustees of Series B-K.

*Sherman S. Rogers*, for the trustees of Series C-2.

*Simpson, Thacher & Bartlett* [*H. J. McAfee* of counsel], for various trustees.

*Olney & Geer* [*Olin Potter Geer* of counsel], for Cornelius J. Smyth, as trustee of Series A-2, *amici curiæ*.

FRANKENTHALER, J.   Application has been made to this court by the trustees of Series F-1 for instructions as to the method of

treating receipts and disbursements shown in their annual accountings, particularly as to the distinction, if any, to be made between principal and income. The trustees of various other large issues have submitted memoranda dealing with the same question.

Obviously any views expressed by this court as to the manner in which trustees of various reorganized issues of certificated mortgages shall prepare and present their annual accounts are not binding on the taxing authorities, nor can they control the apportionment of receipts and disbursements as between life tenants and remaindermen in those cases in which certificates are held in trust. The information necessary for a determination of the manner of such apportionment may be readily made available to the Surrogate's Court or other courts in accounting proceedings when such questions arise.

A suggestion has been made that the principles applicable in bankruptcy should govern, in which event payments made to certificate holders would be considered as principal until their entire claims have been liquidated, after which any excess would be treated as income. It seems to be generally agreed, however, that although the trusts herein involved are liquidating trusts, the bankruptcy principles should not be applied. The declarations of trust expressly provide that until final liquidation of the trust estate the trustees are to manage the same and collect and distribute the *income* thereof. This language is inconsistent with the application of the bankruptcy rule.

It is obviously impossible to formulate in advance fixed and rigid rules which will apply to all the various situations which may confront the trustees. Ordinarily, however, general accounting principles should be employed in dealing with receipts and disbursements. Items such as amortization of mortgages are to be treated as principal. Profits derived from the sale of properties should likewise be regarded as principal, and conversely principal should be decreased by losses arising from the sale of properties. Additional capital outlays for construction or demolition of buildings, and expenditures for remodelling and betterments of a kind tending to enhance the value of the property, should also be capitalized.

Such items as current operating expenses, taxes, and replacements necessary to keep the properties in efficient operating condition should be charged as expenses payable out of current income. Ordinarily, costs of reorganization and of mortgage foreclosure represent additional capital charges, but it is recognized that property when acquired in foreclosure is frequently worth less than the amount of the mortgage plus foreclosure costs (tax arrears, etc.),

and the trustees may, therefore, in the exercise of their sound discretion, charge the cost of foreclosure to income account. There seems to be no sound ground for distinguishing between arrears of interest and current interest. Both constitute income, as do rents and similar items received by the trustees.

Generally speaking, the allocation of items between principal and income which would have governed had the property remained under the control of the title company should be followed by the trustees in the classification of such items. Advances made from principal to cover operating deficits should be repaid out of income account and similarly, where deficiencies in principal have been made good by advances from income account, these should be repaid from principal as moneys become available.

In the absence of a specific provision on the subject in the trust indenture, the trustees should not create a reserve for depreciation or withhold any moneys from distribution on the basis of such a theoretical reserve. The indentures contemplate that certificate holders will ultimately receive all of the funds coming into the hands of the trustees by way of principal or interest, and there is, therefore, no need or justification for a depreciation reserve, the trusts being liquidated in nature.