In the Matter of the NEW YORK TITLE AND MORTGAGE COMPANY (Series Q).

Supreme Court, Additional Special Term, New York County, February 16, 1944.

*Thomas Keogh* for trustees of Series Q.

*Kramer & Kaprow* for trustees of Series B-K.

*Abraham N. Geller* for Joseph B. Miller, as trustee of Series N-58.

*Abraham N. Geller,* as trustee of Series N-59 and N-85, in person.

HECHT, J. The trustees of this series apply for an order (1) authorizing and directing said trustees to make distribution of certain funds on hand; (2) authorizing and directing them to apportion payments received, in the matter of the claim against the equity receivers of Land Estates, Inc., and Liberdar Holding Corporation, to principal and interest in the proportion in which principal and interest appeared in the total amount of these claims; (3) authorizing and directing them to pay into the principal account of Series Q all sums received on account of the claim allowed against the Superintendent of Insurance, as liquidator of New York Title and Mortgage Company.

Funds on hand which the trustees seek authority to distribute are: (a) a dividend of $9,054.30, received on a claim filed against the equity receivers of Land Estates, Inc.; (b) a dividend of $30,984.92, received on the claim filed against the equity receivers of Liberdar Holding Corporation; (c) a dividend of $120,000, received as a first dividend of 4% on the general claim of the Series against the New York Title and Mortgage Company in liquidation.

The facts with respect to the liquidating dividends received on the claims against the equity receivers of Land Estates, Inc., and Liberdar Holding Corporation, are essentially the same. Land Estates, Inc., and Liberdar Holding Corporation were wholly owned subsidiaries of New York Title and Mortgage Company. It appears that among the bonds and mortgages taken over by the trustees of Series Q, pursuant to the plan of reorganization, there were a number of bonds secured by first mortgages executed by Land Estates, Inc., and Liberdar Holding Corporation. When New York Title and Mortgage Company (the parent company) was placed in liquidation, actions were commenced by creditors in the United States District Court against Land Estates, Inc., and Liberdar Holding Corporation, in which equity receivers of

the corporations (the subsidiary companies) were appointed. The trustees of Series Q filed claims in the District Court against the equity receivers for the amount of the principal and interest due on the bonds and mortgages. The trustees retained their security (the bonds and mortgages), their claims were allowed in full, and by agreement with the participating creditors the allowance of the claims was not subject to any obligation of contribution on the part of the trustees in the event that liquidation of the security might result in a surplus, in excess of the amount of the claims. The securities, or the major portion of them, have not since been liquidated, and are still held by the trustees as part of the trust estate. The dividends received on these claims, therefore, represent partial recoveries on the primary obligations, that is, the bonds secured by first mortgages, still held by the trustees, and are properly applicable in reduction of the indebtedness represented by the mortgages. It is necessary, therefore, that a proper allocation of these dividends, as between principal and interest, be made. In cases such as this, where the liquidation of the securities has not been completed, the problem of allocating a recovery between principal and interest is a difficult one, and has been the subject of considerable litigation in our courts. This is a liquidating trust. The trustees are charged with the duty of liquidating the trust estate and distributing the income collected and the moneys derived from the liquidation of the trust *res,* as expeditiously as possible after the receipt of funds. Trustees may not retain these funds to await complete liquidation, but are obliged to make a distribution at this time. A fair and practical method of apportioning these dividends must be determined. It seems to me that the formula of apportioning these dividends to principal and interest in the same proportion as the amounts for principal and interest are contained in the claims established is fair and equitable. The court, therefore, approves of this part of the application.

The allocation of the dividend received from the Superintendent of Insurance on the general claim of the certificate holders on the company's guarantee presents a different problem. The pertinent facts respecting this claim are: New York Title and Mortgage Company, prior to its being placed in rehabilitation, had sold to a large number of investors participating certificates in a group of bonds and mortgages forming the collateral assets of this group series. These bonds and mortgages were made and executed by various individuals

and corporations, but none of them was made and executed by New York Title and Mortgage Company. In connection with the sale of certificates of participation to the public, New York Title and Mortgage Company guaranteed to the certificate holders the repayment of the principal amounts of their investments and the payment of interest thereon at a specified rate. Upon the purchase of a participating certificate, therefore, the investor acquired two separate and distinct assets — one, a participating interest in a group of bonds and mortgages, which formed the collateral assets of the series, and the second, the contract of guaranty of the title company. Under the plan of reorganization and declaration of trust, approved in this case, the title to both of these assets was vested in the trustees and became part of the trust estate. (*Matter of People* [*Lawyers Westchester M. & T. Co.*], 288 N. Y. 40.) When New York Title and Mortgage Company was placed in liquidation, the trustees of this issue established the claims of the certificate holders against the company on its contract of guarantee. The gross claim was made up of the full principal amount of the certificates issued and outstanding, plus accrued unpaid interest to the date of the order of liquidation (Insurance Law, § 544, formerly § 425). From that gross claim there was deducted the value of all the security held, and the difference represented the net claim on which dividends were payable.

The assets of the trust as received and now held by the trustees underlie both principal and income. No segregation of security is or can be made.

It must be recognized at the outset that in a very substantial number of cases where certificates were and are held in trusts both life tenants and remaindermen must be concerned that proper recognition be given their contributions.

There are three main alternatives available for the crediting of the dividends on the general claim against the title company: (1) to regard the dividends as liquidating funds, to be distributed and accounted for as such, and not to be allocated to either principal or income account of the trust; (2) to allocate the dividends entirely to principal account, as requested by the petitioners; (3) to allocate the dividends on some basis between principal and income accounts.

Considering the first of the proposed methods of allocation, we find that the uniform declaration of trust provides for but two accounts for moneys belonging to the trust — "income" and "other moneys". The latter denomination

has, both by consistent practice and in conformity with recognized principles of accountancy, been regarded as synonymous with " principal ". The funds, therefore, must, under the uniform declarations of trust, be allocated to principal or income, or both, accounts.

Proceeding to a consideration of the second possible method of allocation, we find two primary arguments presented for allocating the claim dividends entirely to principal account: (a) since this is a liquidation attended by apparent insolvency, the bankruptcy theory (all dividends to principal until that account has been paid in full) should apply; and (b) it is factually difficult to agree upon any basis of allocation between principal and income accounts.

The provisions of the declarations of trust negative the application of the bankruptcy theory. This was indicated by Mr. Justice FRANKENTHALER in *Matter of N. Y. Title & Mortgage Co. (Series F-1)* (163 Misc. 333, 334), wherein he said: " It seems to be generally agreed, however, that although the trusts herein involved are liquidating trusts, the bankruptcy principles should not be applied. The declarations of trust expressly provide that until final liquidation of the trust estate the trustees are to manage the same and collect and distribute the *income* thereof. This language is inconsistent with the application of the bankruptcy rule."

The fact that the problem of apportionment is one which is complex and impossible of definite and precise solution cannot stand as a reason to support nonaction by either the trustees or the court. This fact is emphasized when we consider the effect of allocation upon the respective rights of life tenants and remaindermen. The claims enforced by the trustees consisted of principal and interest items. It is apparent that, if the interest item had been excluded from the gross claim, the net claim would have been less by that amount, and the dividends received on the net claim would also have been less. If, therefore, dividends on a net claim which included the interest item in its calculation were distributed entirely as principal, life tenants who are entitled to the interest could properly claim that their rights were being used to enhance the return to the remaindermen without any benefit to the life tenants.

Considering, therefore, the third alternative suggested, we find two possible bases of allocation, the first founded upon the net claim, the second upon the gross claim. At first impression it appears that there is much to be said for an allocation

based upon the net claim, because in theory the net claim measures precisely the loss to the principal and income accounts, respectively, and dividends on the net claim might reasonably be allocated in the ratio by which each element contributed to the net claim.

Actually, however, so many other factors enter into the fixation of the net claim as to make it almost always impossible to arrive at any such ratio. As previously stated, the security is held indiscriminately for both principal and income. There is no segregation of any particular mortgage or property, or part thereof, to either income or principal. Income has an interest in some of the rights attaching to the mortgage or property, e.g., the right to interest or rents, whereas principal has an interest in other rights — amortization payments, sale proceeds. Thus, in valuing each element of security part of the value is attributable to income and part to principal. But no division is ever actually made, so that at no time is it possible to arrive at separate net claims for principal and interest. In addition, other factors enter into the calculation of the net claim, namely, type of " normal " values sought in claim proceedings and deduction for " fractionalism ", and the breakdown of these elements would be most difficult. Moreover, in the vast majority of cases no values for security were ever specifically determined or agreed upon, so that there would be no basis in fact for any formula which required a knowledge of security values. For all the above-indicated reasons, the net-claim method of allocation must be rejected.

I have determined that money received by way of dividends on the general claim must be apportioned between " principal " and " income " in ratio to principal deficiency and interest deficiency as components of the *gross* claim. While, admittedly, this is not an exact method of apportionment, in my judgment it represents a closer approximation of exact apportionment than the others suggested. It is probably the closest approximation of exact apportionment that is attainable under the circumstances and is the most equitable for all concerned.

The second branch of petitioners' application is, therefore, denied and they are directed to make allocation of the dividends on the general claim in the manner indicated above. Settle order.